## U. C. Guss v. Federal Trust Company.

(Filed September 4, 1907.)

(91 Pac. 1045.)

1.   CONTRACTS—Legality—Public   Policy—Railroads—Subscription
in Aid.   A railroad company, for the purpose of aiding in the
construction of its line of road, may accept and enforce an obliga-
tion payable to it, conditioned that the note shall become due·
and payable when the line of road is built and put in operation
to a point named therein, and such a note is. not void or against
public policy.

2.   SAME—Parties to—On Whom Binding.   One who is not privy to·
a contract cannot be bound thereby against his consent to his
detriment, nor can he claim the benefit of any of its favorable
provisions.

3.   TRIAL—Verdict—Duty to Direct, When.   It is the duty of a trial·
court to direct a verdict for a party when the evidence is such
that if a verdict were returned by the jury for the other party,
the court under the law would be required to set the same aside.

(Syllabus by the Court.)

*Error from the District Court of Logan County; before John H.
Burford, Trial Judge.*

Affirmed.

*Cotteral & Hornor,* for plaintiff in error.

*Dale & Bierer* and *Hoyt, Dustin & Kelley,* for defendant in
error.

Opinion of the court by

Burwell, J.:   The Fort Smith & Western Railroad Com-
pany contemplated building its line of road from a point about
forty miles west of the city of Fort Smith, in the state of Arkan-
sas, to the city of Guthrie, Oklahoma, and the company, through
its representatives, proposed that if the people of Guthrie would
execute and deliver to it their respective notes of the aggregate
value of fifty thousand dollars the line would be built to Guthrie.

Notes were executed amounting in all to about fifty-four thousand dollars face value. The defendant executed and delivered his note, which was as follows:

"$500.00                          Guthrie, O. T., Feb'y 1st, 1902.

"The undersigned promise to pay to the order of Ft. Smith & Western Railroad Company, Five Hundred & No-100 dollars at the office of said company in Guthrie, Oklahoma.

"Provided always, that this note becomes due and payable when said Railroad Company shall have in operation a line of railroad from the present terminus of its line in the Indian Territory to the City of Guthrie, Oklahoma Territory.

"[Signed] U. C. Guss."

The road was built on its own right of way to a point about two or three hundred yards north of the corporation boundary of the city, and from there its trains ran over the tracks of the Santa Fe Railway Company to the passenger depot of that company, which the Fort Smith & Western Railroad uses in common with such company. The note in question was transferred to the Federal Trust Company, and, payment having been refused by Mr. Guss, it commenced this action in the district court of Logan county, which resulted in a judgment in its favor, and the defendant has prosecuted this appeal.

The pleadings, the evidence, and the briefs cover a very wide range and present many supposed issues, which at first blush tend to impress one with the idea that the questions involved are difficult of solution; but when we take the facts as disclosed by the evidence and apply to them a few simple, well-established principles of law, the complications are imaginary, and not real. We have examined the record and briefs with a view of determining, if possible, what advantage, if any, was taken of the appellant in this transaction, but are forced to the conclusion that the real defense is the usual one of "ought not to pay," under the assignment of error "that the obligation runs to a railroad company and public policy prohibits a railway company from accepting aid in the building of its road." That a note or contract of the

character involved in this case is not against public policy has been declared by this court after full consideration. The question is no longer an open one. *W. B. Piper v. Choctaw, Northern Townsite and Improvement Company*, 16 Okla. 436, 85 Pac. 965. In the case of *McGuffin v. Coyle and Guss*, 16 Okla. 648, 85 Pac. 954, 86 Pac. 962, decided some months prior to the case just referred to, this court recognized the validity of such contracts where made for the benefit of the railroad company, but by a divided court denied recovery in that particular case, for the reason that the contract on its face ran to an officer of the company, holding that that fact was sufficient to authorize the inference that the contract was made for the benefit of the officers of the company, and not for the benefit of the railroad company itself. By the terms of the contract in this case the appellant agreed to pay to the Fort Smith & Western Railroad Company five hundred dollars when that company (using the language of the contract) "shall have in operation a line of railroad from the present terminus of its line in the Indian Territory to the city of Guthrie, Oklahoma Territory." The road was built and in operation before this suit was commenced. It is true that it is insisted that the company had not built its line of road into the city; but it did not agree to do so. It agreed to build to the city of Guthrie, and the spirit of the contract is that the road should be built so as to afford the people of the city of Guthrie and those living in that community the advantages of such road as an independent line. Under the record this has been done. The contract has been substantially complied with. If it was the desire of those giving aid to the railroad company that it build and maintain separate and independent depot and terminal facilities, they should have so provided in their contracts. Under the record there has been a reasonable compliance with the contract on the part of the railroad company, and the appellant should pay the note, unless he can show some other defense.

But it is insisted that this and other notes were executed under the terms of another contract in writing, entered into between

the railroad company and the citizens of Guthrie through and in the name of the Guthrie Club, of Guthrie, under date of February 20, 1902. The contract is as follows:

"Guthrie, Okla., Feb. 20, 1902.

"Contract and Agreement by and between the Fort Smith and Western Railroad Company and The Guthrie Club of Guthrie, Oklahoma.

"This contract and agreement entered into this 20th day of February, A. D., 1902, by and between the Fort Smith and Western Railroad Company, duly organized, incorporated, and doing business under the laws of the state of Arkansas and the Indian Territory and Oklahoma Territory, and for convenience hereinafter designated the party of the first part, and the citizens of the city of Guthrie, Oklahoma Territory, acting by and through The Guthrie Club, of Guthrie, Oklahoma, an organization duly incorporated under the laws of Oklahoma Territory having for its primary purpose the development of the business interests of the city of Guthrie, and which said Guthrie Club, of Guthrie, Oklahoma, is for convenience hereinafter designated the party of the second part. WITNESSETH: That

"Whereas, said first party did on the 24th day of January, 1902, submit to the citizens of the city of Guthrie, Logan county, Oklahoma Territory, a proposition wherein and whereby said first party proposed and offered to extend its line of railway from its present terminus in the Indian Territory, to the city of Guthrie Logan county, Oklahoma Territory, provided, the citizens of said city of Guthrie would make, execute and deliver their promissory notes to said first party of the value of fifty thousand dollars ($50,000.00) and also secure for the use and benefit of said first party the passage by the mayor and council of the city of Guthrie, such ordinances as should in the opinion of said first party be necessary and essential for the use of said first party in the construction and operation of its line of railroad in said city; and

"Whereas, said proposition as in substance above set forth was by the citizens of said city of Guthrie in a public meeting duly accepted, and in compliance herewith the citizens of the city of Guthrie have executed and caused to be executed promissory notes to the amount as shown by their face of approximately fifty-four thousand dollars ($54,000.00) and have the same now ready for delivery, and the mayor and common council of said city of

Guthrie have by the passage of ordinances permitted said first party to construct and operate its line of railway into and through the city of Guthrie, as requested by said first party; and

"Whereas, there being a question involved as to whether or not the promissory notes above and herein referred to are of the full value of fifty thousand dollars ($50,000.00) in lieu of additional subscriptions and in payment by said first party of the sum hereinafter designated, the mayor and common council of said city of Guthrie have by resolution duly enacted, passed, approved and directed a contract to be entered into between the city of Guthrie and said first party herein named, whereby the said city of Guthrie shall, for a period of five (5) years from the 1st day of January, 1903, furnish a supply of water for the use of locomotives, yards and terminals of said first party; and

"Whereas, said first party for the purposes of convenience and to enable it to more readily carry out its purposes in building its line of railway as proposed and understood between the parties hereto, did on the 14th day of February, 1902, file articles of incorporation in the office of the secretary of the territory of Oklahoma and thereafter receive a charter under the name of The Fort Smith and Western Railroad Company in Oklahoma, permitting the construction of a line of railroad from the east line of Lincoln county in said territory to the city of Guthrie, therein, which line of railroad when constructed is to connect with and become a part of the present line of railroad now being operated and constructed and owned by said first party, and which said last mentioned line will when completed, be operated from Fort Smith, in the state of Arkansas, to the western boundary of the Creek Nation in the Indian Territory, and there connect with, and become a part of, the line of railroad to be constructed and operated in Oklahoma Territory as hereinafter described and set forth:

"NOW, therefore, for the purpose of fully carrying out and expressing the purposes and intention of the parties hereto and in consideration of the surrender to said first party of the promissory notes hereinbefore mentioned, and in further consideration of the ordinances enacted and resolutions passed by the mayor and council of the city of Guthrie, and the further promise upon the part of said second party to cause the passage and enactment of such other ordinances upon the part of said mayor and council as

may be found necessary for the construction and operation of said line of railroad in said city of Guthrie, said first party hereby stipulates and agrees to and with said second party that it will within ninety (90) days from the first day of February, 1902, begin the work of grading for its line of railroad as above described between the city of Guthrie and a point on the St. Louis and San Francisco Railroad, between the city of Chandler, Oklahoma, and a point five (5) miles west of the city or town of Wellston in said territory; that its entire grade for its line of railroad from the present terminus of its line in the Indian Territory to the city of Guthrie, Oklahoma Territory, shall be completed within fifteen (15) months from February 1, 1902, and that said line of railroad from the terminus above named in the Indian Territory, shall be constructed and in operation within eighteen (18) months from said 1st day of February, 1902.

"The party of the first part hereby executes the above and foregoing contract this 20th day of February, 1902.

"THE FORT SMITH AND WESTERN RAILROAD COMPANY.

"By GEO. HAYDEN, Its President.

"The party of the second part hereby executes this contract this 20th day of Feby., 1902.

"THE GUTHRIE CLUB, of Guthrie, Oklahoma.

"By C. M. BARNES, Its President.

"ATTEST: FRANK B. LUCAS, Secretary. [SEAL]"

The appellant has misapprehended the scope of this contract. So far as the five hundred dollar contract is concerned, it has absolutely nothing to do with this contract, and the appellee's rights to recover are found entirely outside of any of the provisions contained in the one just quoted above. The appellant's contract for the payment of the $500 is a contract direct with the railroad company, and its terms cannot be enlarged or restricted by anything found in the contract between the railroad company and the Guthrie Club. The appellant's contract is conditioned upon the performance of two things: First, that the road be built; and, second, that it be put in operation. There is not even any time stated when these things shall be done. The most that can be said is that the railroad company could bind the appellee only upon

compliance with the terms of the contract within a reasonable time. That is not true with the contract with the Guthrie Club. It fixes a time in which the railroad company shall perform the things named therein. Perhaps it will be well to analyze its provisions briefly.

The first statement is that the contract is between the Fort Smith and Western Railroad Company and the Guthrie Club, of Guthrie, Oklahoma. In the next sentence it recites the contract is with the Fort Smith and Western Railroad Company and the citizens of the city of Guthrie, Oklahoma Territory, acting by and through the Guthrie Club, of Guthrie, Oklahoma, having for its primary purpose the development of the business interests of the city of Guthrie. The question at once arises: Who is meant in the contract by "the citizens of the city of Guthrie"? The position that it refers to those who signed the notes is not tenable, for, if those contracting intended to protect the interests of that class alone, they would have said so in plain and unambiguous words. And, again, that class had individually contracted with the railroad company direct. They had not appointed the Guthrie Club as their agent, and the club did not assume to act for them. They claimed to represent the citizens of Guthrie—those who had not contributed, as well as those who had. The club was not acting for those who gave their notes, but was looking after the building up of the city, and with that object in view it made a contract with the railroad in its own name, for it could not contract on behalf of the people as a whole in the name of the citizens of Guthrie, because the entire people can contract only through their duly elected or appointed officers. We shall not at this time attempt to express any opinion as to the legality of this contract with the Guthrie Club, and shall discuss its provisions only in so far as it appears necessary to determine its bearing upon the contract executed by the appellant. However, the more the contract is examined, the more unsound appears the appellant's contention.

We come now to a consideration of the substance of the con-

tract itself. It provides that "whereas, the railroad company proposed and offered to extend its line of railway from its present terminus in the Indian Territory to the city of Guthrie, provided the citizens of that city would make, execute and deliver their promissory notes of the value of fifty thousand dollars to the railroad company and also secure for the use and benefit of the railroad company the passage by the mayor and council of the city of Guthrie such ordinances as should in the opinion of the railroad company be necessary and essential for the use of the company in the construction and operation of its line of railroad in the city." The contract then recites that the citizens of Guthrie at a public meeting accepted the proposition of the railroad company, and that the ordinances permitting the company to construct and operate its road into and through the city of Guthrie had been passed and notes of the face value of fifty-four thousand dollars had been executed and were now ready to be delivered. Here is where we come to the vital portions of the contract—those portions which show what the parties had in mind at the time, and the considerations which led to the making of the contract. A doubt had arisen in the minds of the parties interested as to whether the notes that had been executed, although of the face value of fifty-four thousand dollars, were in fact worth fifty thousand dollars, and, instead of securing more notes, the city of Guthrie, by its mayor and common council, passed a resolution whereby the city, for a period of five years from the first day of January, 1903, was to furnish a supply of water for the use of locomotives, yards, and terminals of the railroad company. The language of this particular clause of the contract is as direct and positive as it is possible for language to make it. Let us read it in this connection:

"Whereas, there being a question involved as to whether or not the promissory notes above and herein referred to are of the full value of fifty thousand dollars, in lieu of additional subscriptions and in payment by said first party of the sum hereinafter designated, the mayor and common council of said city of Guthrie have by resolution duly enacted, passed, approved, and di-

rected a contract to be entered into between the city of Guthrie and said first party herein named, whereby the said city of Guthrie shall, for a period of five (5) years from the 1st day of January, 1903, furnish a supply of water for the use of locomotives, yards, and terminals of said first party."

Then follows the last clause of the contract. It says:

"Now, therefore, for the purpose of fully carrying out and expressing the purposes and intentions of the parties hereto, and in consideration of the surrender to said first party of the promissory notes hereinbefore mentioned, and in further consideration of the ordinances enacted and resolutions passed by the mayor and council of the city of Guthrie, and the further promise upon the part of said second party to cause the passage and enactment of such other ordinances upon the part of said mayor and council as may be found necessary for the construction and operation of said line of railroad in said city of Guthrie, said first party hereby stipulates and agrees to and with said second party that it will within ninety (90) days from the first day of February, 1902, begin the work of grading for its line of railroad as above described between the city of Guthrie and a point on the St. Louis & San Francisco Railroad, between the city of Chandler, Oklahoma, and a point five (5) miles west of the city or town of Wellston, in said territory; that its entire grade for its line of railroad from the present terminus of its line in the Indian Territory to the city of Guthrie, Oklahoma Territory, shall be completed within fifteen (15) months from February 1, 1902, and that said line of railroad from the terminus above named in the Indian Territory to the city of Guthrie in Oklahoma Territory, shall be constructed and in operation within eighteen (18) months from the 1st day of February, 1902."

Then the contract is signed "The Fort Smith and Western Railroad Company, By Geo. Hayden, Its President," and "The Guthrie Club, of Guthrie, Oklahoma, By C. M. Barnes, Its President. Attest: Frank B. Lucas, Secretary. [SEAL]"

The Guthrie Club had in its possession these notes for fifty-four thousand dollars. It had also secured the passage of certain ordinances and agreed to secure the passage of others if they became necessary. And in consideration of these ordinances and

the delivery of these notes the railroad company agreed to complete its road and have it in operation within a certain time. These notes, however, were to be delivered as they were originally executed and as they then existed. The contract nowhere attempts to modify the terms and conditions of the notes, and the contention of the appellant that this contract with the Guthrie Club is void as against public policy, in that it is agreed therein to secure legislation from the city council, may, for the sake of argument (but for that purpose alone at this time), be conceded, and still the appellant is bound on his note. Although this contract recites in one place that it is executed by the Guthrie Club for the citizens of Guthrie, it is apparent, and such is the legal effect, that it executed the contract for and on behalf of itself, and the promise to complete the road and have it in operation within a stated time is a promise to the club, and not a promise to either the city of Guthrie or its citizens as a municipality, or to the makers of the notes.

What consideration flowed from Guss to the railroad company for the promise in this contract that the road should be built and in operation within the time stated therein? It cannot be said to be the five hundred dollars, because he had already agreed personally in the note signed by himself to pay that when the road was built and in operation. And this note specified no time for the building of the road. If the Guthrie Club had agreed in this contract that the appellant and others giving notes should contribute an additional sum in the event that the railroad company failed to realize fifty thousand dollars on these notes—that is, that he, together with those who were responsible, should increase the amount of their respective notes *pro rata* and make up the sum which the railroad company failed to collect—would it be presumed that this appellant would not, if sued upon this contract, deny the power of the club to bind him? Of course he would, and no court would hold that the club had such power under the facts disclosed by this record. If the club could not change the

terms of his note so as to increase his liability, it could not by a separate, independent contract, executed without express authority from him, reduce his liability below that to which he had agreed in his note.

The Guthrie Club, after the railroad company failed to complete the road within the time specified in the contract which we have been considering, made another agreement with the railroad company extending the time for completing the road and putting it in operation. This contract is also discussed at some length by both parties, but it is not necessary to consider it. Having held that Mr. Guss was not privy to the first contract made between the railroad company and the Guthrie Club, he could have no interest in its subsequent modification.

It is also contended by appellant in his brief, as well as alleged in his pleading, that there was no consideration for the note in question, for the reason that the railroad company had concluded to build the line to Guthrie before the proposition was made by the company's officials that it would do so if the citizens of Guthrie would give notes of the value of fifty thousand dollars. Even if this were true it would not defeat recovery, unless representations were made which deceived the appellant, and without which representations he would not have given the note in controversy. We have read appellant's evidence carefully, and are fully satisfied that he was not deceived. In fact, he does not claim that he was deceived.

From these observations it necessarily follows that the judgment of the lower court should be affirmed. In the business world nothing is more sacred than the right of contract. And one of the highest duties of courts is to compel obedience to their terms by those who make them, when there exists no valid reason for relieving either of the parties from the performance of the conditions thereof. And in these times, when much is being done to enforce railroads to conform to the law and respect *their* obligations, care should also be exercised to the end that, through passion and prejudice, they be not deprived of that to which they

Territory of Oklahoma v. J. Robertson *et al.*

are lawfully entitled. The evidence in this case discloses that the appellant is a man of experience, and that he has in the past been interested in making contracts of a similar character to the note in controversy. He has offered absolutely no legal excuse why he should not pay this note. Therefore the law, through its agencies, will compel him to do so. The trial court properly directed a verdict for plaintiff. A judgment for the defendant, under the evidence, could not have been sustained.

The judgment of the lower court is hereby affirmed.

Burford, C. J., who presided in the court below, not sitting; Hainer, J., not sitting; Irwin and Garber, JJ., absent; all the other Justices concurring.