## METROPOLITAN RAILWAY COMPANY v. MRS. E. P. FONVILLE.

(Filed September 5, 1907.)

(91 Pac. 902.)

1. **STREET RAILWAYS—Traveler—Contributory Negligence.** A driver of a vehicle who suddenly turns his team to cross a street railway track without looking and listening for an approaching car, and without taking the ordinary care and precautions imperatively required of all who place themselves in a similar position of danger, is guilty of contributory negligence as a matter of law.

2. **TRIAL—Duty to Direct Verdict, When.** While questions of negligence and contributory negligence are, ordinarily, questions of

fact to be passed upon by the jury, yet, when the undisputed evidence is so conclusive that the court ought to set aside a verdict returned in opposition to it, it is the duty of the court to withdraw the case from the consideration of the jury and direct a verdict.

(Syllabus by the Court.)

*Error from the District Court of Oklahoma County; before B. F. Burwell, Trial Judge.*

Reversed and Remanded.

*Shartel, Keaton & Wells,* for plaintiff in error.

*J. O. Davis,* for defendant in error.

Opinion of the court by

HAINER, J.: This was an action for personal injuries, brought by the defendant in error, plaintiff in the court below, against the Metropolitan Railway Co., to recover damages sustained by her by reason of the alleged negligence of the defendant company. The defenses interposed by the defendant were: First, a general denial; and, second, that the plaintiff was guilty of contributory negligence. From a verdict and judgment for the plaintiff, the defendant appeals.

The testimony of the plaintiff disclosed substantially the following facts: That she resided about fourteen miles from Oklahoma City. That on the morning of April 28, 1903, she came to the city with her husband, arriving about six o'clock in the morning. That they were driving two horses to a hack. That on arriving in the city they first stopped at what is known as Whetstone's store, on the corner of First and Broadway streets. That before reaching Whetstone's store the plaintiff had gone down Broadway, on the east side of the double track for several blocks. At Whetstone's store the plaintiff and her husband stopped to deliver some vegetables which they were carrying in the hack. That when Mr. Fonville came out of the store he walked on down to what is known as Brown's store, and directed his wife to drive the team on down there. It appears that Brown's store is located on Main

street, about the middle of the block west of Broadway; Main street being the next street south of First street, where Whetstone's store is located.  It further appears that the plaintiff drove from the Whetstone store one block south along the east side of the street car tracks on Broadway.  That at the corner of Main and Broadway she stopped near Laird's store, with her horses facing south. At this point she saw a car approaching from the north, and stopped and waited for this car to pass her, which it did by turning the corner at Main and Broadway, and going directly west on Main street.  She testifies that she did not think of another car approaching, and did not look towards the south to see if any other car was approaching, but as soon as the car from the north passed her, or, rather, around the corner of Main and Broadway, she says that she thought she was safe, and "circled the horses around" across the track to go up Main street, and was then run into by a street car coming from the south, which car she says she did not see until it struck her.  The petition alleges that the motorman could have seen her at a distance of more than five hundred feet, and all the testimony tends to show that at a distance of from three to four hundred feet she could have seen the car approaching her, had she looked to the south.  The petition also alleges that the car was running at a very high rate of speed, to-wit, fifteen or twenty miles per hour, at the time of the collision, and that the defendant failed to sound any gong or give any other signal to warn the plaintiff of the approach of the car. But it appears that the plaintiff failed to offer any testimony as to the speed of the car at the time of the collision, or immediately prior thereto.  Nor was there any testimony offered by the plaintiff as to the distance the car was away when it first became apparent to the motorman that the plaintiff was about to turn or "circle" her team, which was facing south on the east side of the track, around to cross the track in a westerly direction.  Nor was there any testimony offered that the motorman was not at his proper station at the time of the collision.  The plaintiff testi-

fies that she did not hear the gong sounded. The evidence further shows that the plaintiff was a married woman, forty years of age, in good health, and in full possession of all her faculties. At the conclusion of the plaintiff's evidence, the defendant interposed a demurrer to the evidence on the ground that the plaintiff's testimony showed that she was guilty of contributory negligence, and that she had failed to establish a cause of action. The demurrer was overruled, and an exception noted.

The evidence on behalf of the defendant tended to show that the car that caused the accident was equipped with all the modern appliances, and was in good condition; that it had rained that morning, and that the track was in a wet and slippery condition; that the car was thirty feet long, and weighed about eight tons, and was being run on Grand avenue and Main street at the rate of from four to five miles per hour at the time the motorman first saw the team; that at this point the track was level, and entirely free from obstructions; and that going at the rate of speed mentioned it would require from thirty to forty feet at least to stop the car. It further appears from the testimony that the motorman saw the team standing on the east side of the track, about five feet west of the curb, when he was about the middle of the block; that when the motorman first saw the plaintiff with her team he had no idea that she was going to turn on the track, until he saw her start in that direction, at which time the car was about fifteen or twenty feet from the place of the accident; that the motorman did everything in his power to stop the car and avoid the collision. A number of witnesses testified on behalf of the defendant that the gong was sounded as the car was approaching from the south. At the conclusion of all the testimony the defendant requested the court to submit to the jury a peremptory instruction to find the issues in favor of the defendant and against the plaintiff, which instruction was refused, and an exception saved. After filing a motion for a new trial, which was overruled and an exception saved, the defendant brings the case here for review.

Three errors are relied upon for a reversal of the judgment. They are: (1) That there was no evidence fairly tending to show negligence on the part of the defendant; (2) that the plaintiff's own testimony shows that she was guilty of contributory negligence; and (3) that the court erred in giving instruction number six.

It was alleged in the petition that the defendant was guilty of negligence, in this: the car was moving at a high rate of speed at the time of the collision; (2) that no gong was sounded; and (3) that the motorman saw the plaintiff in a position of danger in time to have avoided the accident, or, by the exercise of reasonable care and caution, should have seen her in such dangerous position in time to have avoided the collision. As heretofore stated, the plaintiff wholly failed to show that the car was traveling at a high rate of speed at the time of the collision or immediately prior thereto. On the other hand, the testimony of the witnesses for the defendant, as well as the physical facts, shows that the car was moving at a slow rate of speed, not to exceed five miles per hour, at the distance of from three hundred to four hundred feet from the place of collision. And on the question of whether the gong was sounded, there is little or no dispute in the testimony. The plaintiff testifies that she did not hear it, and she thinks that she would have heard it had it been sounded. On the other hand, the defendant's witnesses, who were eye-witnesses to the accident, testify positively that the gong was sounded, and that the motorman did everything in his power to prevent the collision. The above is substantially the testimony offered on behalf of the plaintiff, as well as the defendant, as we gather it from the record. Upon such a state of facts, then, what is the law?

In *Railroad Company v. Houston,* 95 U. S. 697, it was held that: "The neglect of the engineer of a locomotive of a railroad train to sound its whistle or ring its bell on nearing a street-crossing does not relieve a traveler on the street from the necessity of

taking ordinary precautions for his safety. Before attempting to cross the railroad track, he is bound to use his senses—to listen and to look— in order to avoid any possible accident from an approaching train. If he omits to use them, and walks thoughtlessly upon the track, or if, using them, he sees the train coming, and, instead of waiting for it to pass, undertakes to cross the track, and in either case receives any injury, he so far contributes to it as to deprive him of any right to complain. If he chooses in such a position to take risks, he must suffer the consequences. They cannot be visited upon the railroad company." And in the course of the opinion, Mr. Justice Field, speaking for the court, said: "Negligence of the company's employes in these particulars was no excuse for negligence on her part. She was bound to listen and to look, before attempting to cross the railroad track, in order to avoid an approaching train, and not to walk carelessly into the place of possible danger. Had she used her senses she could not have failed both to hear and to see the train which was coming. If she omitted to use them, and walked thoughtlessly upon the track, she was guilty of culpable negligence, and so far contributed to her injuries as to deprive her of any right to complain of others. If, using them, she saw the train coming, and yet undertook to cross the track, instead of waiting for the train to pass, and was injured, the consequences of her mistake and temerity cannot be cast upon the defendant. No railroad company can be held for a failure of experiments of that kind. If one chooses, in such a position, to take risks, he must bear the possible consequences of failure. Upon the facts disclosed by the undisputed evidence in the case we cannot see any ground for a recovery by the plaintiff. Not even a plausible pretext for the verdict can be suggested, unless we wander from the evidence into the region of conjecture and speculation. Under these circumstances, the court would not have erred had it instructed the jury, as requested, to render a verdict for the defendant."

In *Elliott v. Chicago, Milwaukee and St. Paul Railway Com-*

*pany,* 150 U. S. 245, it was held that though questions of negligence and contributory negligence are, ordinarily, questions of fact to be passed upon by a jury, yet, when the undisputed evidence is so conclusive that the court would be compelled to set aside a verdict returned in opposition to it, it may withdraw the case from the consideration of the jury, and direct a verdict. In the course of the opinion, Mr. Justice Brewer, speaking for the court, said: "But one explanation of his conduct is possible, and that is that he went upon the track without looking to see whether any train was coming. Such omission has been again and again, both as to travelers on the highway and employes on the road, affirmed to be negligence. The track itself, as it seems necessary to iterate and reiterate, is itself a warning. It is a place of danger. It can never be assumed that cars are not approaching on a track, or that there is no danger therefrom. It may be, as is urged, that his motive was to assist in getting the hand car out of the way of the section moving on the siding. But whatever his motive, the fact remains that he stepped on the track in front of an approaching train, without looking, or taking any precautions for his own safety. This is not a case in which one, placed in a position of danger through the negligence of the company, confused by his surroundings, makes perhaps a mistake in choice as to the way of escape, and is caught in an accident. For here the deceased was in no danger. He was standing in a place of safety on the south of the main track. He went into a place of danger from a place of safety, and went in without taking ordinary precautions imperatively required of all who place themselves in a similar position of danger. The trial court was right in holding that he was guilty of contributory negligence."

And the courts uniformly hold that the same doctrine is applicable to electric street cars as to steam railroads.

In *Everett v. Los Angeles Consol. Electric Ry. Co.,* 43 Pac. 209, the supreme court of California, in passing upon this question, said: "Nor is there any distinction, in the application of this

doctrine, between an electric or cable line operated upon the public streets of a city, and that of an ordinary steam railway operated upon the right of way of the corporation. While the deceased had the undoubted right to a reasonable use of the public street, notwithstanding its occupancy by the defendant's tracks, he could not ignore or disregard the rights of the latter in the premises, nor neglect to take reasonable precautions for his own safety. If he chose to make use of the part of the street occupied by the tracks, it was his duty to look out for and endeavor to avoid the dangers incident to such use;"—citing numerous authorities to the effect that it is the duty of the traveler to look and listen for approaching cars when about to drive across the tracks of a street railway company, and a failure to do so is such contributory negligence as will preclude a recovery for injuries received, in case of a collision.

The same doctrine is announced by the supreme court of Colorado in *Davidson v. Denver Tramway Co.*, 35 Pac. 922.

In *Young v. Citizens' St. R. Co.*, 44 N. E. 927, the supreme court of Indiana held that: "It is the duty of one walking close to, or about to cross, a street-car track, to 'look and listen,' as in the case of like situation to a steam railroad." And in *Indianapolis St. Ry. Co. v. Marschke,* 70 N. E. 495, it was said that: "It is unnecessary to discuss the relative rights of a street car company and a traveler to the use of the street occupied by street car tracks. The simple question here involved is this: Can a person, traveling upon a street, deliberately drive or walk in front of an approaching car, without looking or taking any precautions to avoid a collision, and recover for resulting injury? This question must be answered in the negative, for the authorities so hold." And in *Indianapolis St. Ry. Co. v. Zaring,* 71 N. E. 270, it is said: "Where, in an action against a street railway company for the death of one run into by a car, it appears that he could have seen if he had looked, and heard if he had listened, the approaching car in time to have avoided the collision, the facts show contributory negligence *per se.*"

In *Burns v. Metropolitan St. Ry. Co.,* 71 Pac. 244, the su-

preme court of Kansas held: "A traveler on a city street, who is about to cross the tracks of an electric street car company, must exercise his faculties of sight and hearing, and under special circumstances must use other careful and prudent means to ascertain whether a car is approaching. The prevailing rule respecting the care required of a traveler over steam railway tracks applied to one crossing a street railway." And in *Metropolitan St. Ry. Co. v. Ryan,* 71 Pac. 267, it was held by the supreme court of Kansas that: "Where, upon the trial, plaintiff testified she alighted from an east-bound street car, and passed back of it and to the northward upon a parallel track four feet distant, on which cars traveled in an opposite direction, without looking for an approaching car, and sustained injury, and, to have looked eastward along the space between the parallel tracks after passing by the end of the standing car, an approaching car could have been seen a distance of two blocks, held error to overrule a demurrer to plaintiff's evidence."

In *Hurley v. West End St. Ry. Co.* 62 N. E. 263, the supreme court of Massachusetts held that: "Where plaintiff, in the daytime, drove across the tracks of a street railway, on which he knew electric cars were running, without looking to see whether a car was coming or not, and knew nothing of its approach until it hit the hind wheels of his wagon, or until it was a rail off, it was proper, in an action for the injuries, to rule that plaintiff was not in the exercise of due care, and take the case from the jury."

To the same effect are the following authorities: *McGee v. Consolidated St. Ry Co.* (Mich.) 60 N. W. 293; *Henderson v. Detroit Cit. St. Ry. Co.* (Mich.) 74 N. W. 525; *Doherty v. Detroit Cit. St. Ry. Co.* (Mich.) 80 N. W. 36. *Deitring v. St. Louis Transit Co.* (Mo.) 85 S. W. 140; *Riska v. Union Depot R. C.* (Mo.) 79 S. W. 445; *Markowitz v. Metro. St. Ry. Co.* (Mo.) 85 S. W. 351.

In *Hannan v. No. Jersey St. Ry. Co.* 47 Atl. 803, the supreme court of New Jersey held that: "A driver of a vehicle is guilty of contributory negligence in suddenly, and without warning, turn-

ing his horses across a street railway track, directly in front of an approaching car."

The supreme court of Oregon has held to the same rule in the following cases: *Smith v. City & Sub. Ry. Co.* 46 Pac. 136; *Wolf v. City & Sub. Ry. Co.* 72 Pac. 329.

The same doctrine is announced by the supreme court of Wisconsin in the case of *Cawley v. La Crosse City Ry. Co.* 77 N. W. 180, where Mr. Justice Marshall, speaking for the court, said: "The theory upon which the court sent this case to the jury on the subject of contributory negligence manifestly was that, conceding the rule of law requiring plaintiff to look and listen, her testimony that she did so was sufficient to require the jury to find where the trouble lay, as if it were permitted to them to say on such evidence that she did in fact look and listen, and yet did not see or hear the car that was unquestionably in plain sight and hearing. In that there was a failure to observe the limits beyond which a jury cannot go. They cannot go beyond the boundary of reasonable probabilities in determining facts from evidence without going into the realms of conjecture or perversity. This court has often held that the rule of law that requires a person to look and listen before going upon a railway track requires him to see and hear an approaching car if it is so located as to be plainly within view and hearing, that evidence of a person so circumstanced that he looked but did not see, or listened yet did not hear the car, if believed at all, is only to establish contributory negligence by showing that he knowingly placed himself in a place of danger. *Groesbeck v. Railway Co.* 93 Wis. 505, 67 N. W. 1120; *Schneider v. Railway Co.* (Wis.) 75 N. W. 169; *Steinhofel v. Railway Co.* 92 Wis. 123, 65 N. W. 852; *Haetsch v. Railway Co.* 87 Wis. 304, 58 N. W. 293."

The doctrine is well settled by the authorities that when the evidence given at the trial, with all the inferences which the jury could justifiably draw therefrom, is insufficient to support a verdict, and that such verdict, if returned, ought to be set aside, the

court should not submit the case to the jury, but ought to direct a verdict for the defendant.

In *Pawling v. U. S.* 4 Cranch (U. S.) 222, Chief Justice Marshall stated this rule as follows: "The general doctrine on a demurrer to evidence has been correctly stated at the bar. The party demurring admits the truth of the testimony to which he demurs, and also those conclusions of fact which a jury may fairly draw from that testimony. Forced and violent inferences he does not admit; but the testimony is to be taken most strongly against him, and such conclusions as a jury might justifiably draw the court ought to draw." In *Pleasants v. Tants,* 22 Wall. (U. S.) 121, Mr. Justice Miller, speaking for the court, clearly and forcibly states the true doctrine as follows: "It is the duty of a court in its relation to the jury to protect parties from unjust verdicts arising from ignorance of the rules of law and of evidence, from impulse of passion or prejudice, or from any other violation of his lawful rights in the conduct of a trial. This is done by making plain to them the issues they are to try, by admitting only such evidence as is proper in these issues, and rejecting all else; by instructing them in the rules of law by which that evidence is to be examined and applied, and finally, when necessary, by setting aside a verdict which is unsupported by evidence or contrary to law. In the discharge of this duty it is the province of the court, either before or after the verdict, to decide whether the plaintiff has given evidence sufficient to support or justify a verdict in his favor, not whether on all the evidence the preponderating weight is in his favor. That is the business of the jury. But, conceding to all the evidence offered the greatest probative force which according to the law of evidence it is fairly entitled to, is it sufficient to justify a verdict? If it does not, then it is the duty of the court after a verdict to set it aside and grant a new trial. Must the court go through the idle ceremony in such a case of submitting to the jury the testimony on which plaintiff relies, when it is clear to the judicial mind that if the jury should find a verdict in favor of

plaintiff that verdict would be set aside and a new trial had? Such a proposition is absurd, and accordingly we hold the true principle to be, that if the court is satisfied that, conceding all the inferences which the jury could justifiably draw from the testimony, the evidence is insufficient to warrant a verdict for the plaintiff, the court should say so to the jury." And in *Bowditch v. Boston*, 101 U. S. 18, the settled doctrine of the supreme court of the United States is stated as follows: "It is now a settled rule in the courts of the United States that whenever, in the trial of a civil case, it is clear that the state of the evidence is such as not to warrant a verdict for a party, and that if such a verdict were rendered the other party would be entitled to a new trial, it is the right and duty of the judge to direct the jury to find according to the views of the court. Such is the constant practice, and it is a convenient one. It saves time and expense. It gives scientific certainty to the law in its application to the facts and promotes the ends of justice. *Merchants' Bank v. State Bank* 10 Wall. 604, 637; *Improvement Company v. Munson*, 14 Wall. 442; *Pleasants v. Fant.* 22 Wall. 116."

In *Cawley v. La Crosse City Ry. Co.* 77 N. W. 181, the supreme court of Wisconsin states the rule as follows: "Candor compels us to say that in this case the learned trial court appears to have shifted a duty onto the jury which was plainly judicial, and when they failed to discharge it properly, allowed the result to stand as the law of the case. The jury did not find the fact because there was no controversy in that regard. They said that the conduct on the part of defendant was actionable negligence, and conduct on the part of plaintiff was consistent with ordinary care, when the proper application of well-settled rules of law would have led to a contrary result. The peculiar circumstances of this case move us to reiterate what has often before been said by this court, that though the rule that where there is any credible evidence which, under any reasonable view of it, will sustain a recovery, and there is opposing evidence, it is for the jury to say where the

truth lies, should be firmly adhered to, where the evidence is clearly susceptible of only one reasonable inference, the motion for a nonsuit, or the direction of a verdict accordingly, should be granted as a matter of right, which implies a judicial duty to decide that way, and not to abrogate the judicial function and shift it onto the jury. *Finkelston v. Railway Co.* 94 Wis. 270, 68 N. W. 1005. A proper administration of justice requires that such a situation should be met, and the duty involved be discharged as contemplated by our judicial system, just as much as that the province of the jury to decide the facts from the evidence, where there is any conflict in that regard, should not be invaded by the court. The scope of judicial duty, and of that of the jury as well, is clearly marked, and a failure to maintain the integrity and inviolability of either is subversive of the system itself, and tends to throw doubt upon its efficacy to secure the highest attainable degree of justice between individuals, and to promote the ends of good government."

Tested by these decisions, we think the undisputed testimony shows that the plaintiff was guilty of such contributory negligence as would preclude her from recovering in this case, and therefore the motion to direct a verdict for the defendant should have been sustained. This is not a case, as was stated by the supreme court of the United States in *Elliott v. Chicago, Milwaukee and St. Paul Railway Company, supra,* in which one, placed in a position of danger through the negligence of the company, confused by his surroundings, makes perhaps a mistake in choice as to the way of escape, and is caught in an accident. For in the case at bar the plaintiff was in no danger. She was at a place of absolute safety on the east side of the street car track. She suddenly, as she states, "circled around" from a place of safety and drove heedlessly and carelessly over the track, without looking for an approaching car from the south, and without taking the ordinary care and precautions that she was bound to exercise under the circumstances for her own safety. Hence she was clearly guilty of contributory negligence, as a matter of law.

The judgment of the district court is therefore reversed, and the cause remanded, with directions to award a new trial.

Burwell, J., who presided in the court below, not sitting; Irwin J., absent; all the other Justices concurring.