**JOHNSON et al. v. STATE BANK OF COMMERCE.**

No. 16310—Opinion Filed April 6, 1926.

Rehearing Denied Jan. 18, 1927.

**1. Trial—Motion to Direct Verdict—Consideration.**

The question presented to the trial court on a motion to direct a verdict is whether, admitting all the evidence which has been given in favor of the party against whom the action is contemplated, together with such inferences and conclusions as may be reasonably drawn from it, there is enough competent evidence to reasonably sustain a verdict in favor of the party against whose evidence the demurrer is directed.

**2. Same—When Verdict Directed.**

The court should direct a verdict where a different verdict would be set aside as contrary to the evidence.

**3. Same.**

Where there is no question of fact raised by the evidence of the defendant that could be properly submitted to a jury, it is not error to direct a verdict for plaintiff.

(Syllabus by Ruth, C.)

Commissioners' Opinion, Division No. 3.

Error from District Court, Beaver County; Arthur G. Sutton, Judge.

Action by the State Bank of Commerce of Gate. Okla., against P. A. Johnson and another on a promissory note. Judgment for plaintiff, and defendants appeal. Affirmed.

Loofbourrow & Loofbourrow, D. P. Parker, and Mauntel & Spellman, for plaintiffs in error.

O. C. Wybrant, for defendant in error.

Opinion by RUTH, C. The State Bank of Gate, Okla., as plaintiff, brought its action against P. A. Johnson on certain promissory note in the sum of $4,000. Mary M. Johnson was made a party defendant, as it was alleged P. A. Johnson, her husband, had transferred all his property to his wife for the purpose, as alleged, of hindering, delaying, and defrauding his creditors. Mary M. Johnson does not, however, appear to be interested in this appeal, and P. A. Johnson

will be referred to herein as defendant. Defendant was president of the plaintiff bank, and the bank was capitalized at $20,000, and was carrying defendant's note for $4,000. The Bank Commissioner of the state of Oklahoma had on more than one occasion written the bank, demanding that this note and certain other notes be reduced by 50 per cent. Defendant, though president of the plaintiff bank, lived in Coldwater, Kan., but was advised of the attitude of the State Bank Commissioner, and tried to sell his bank stock, of which he held 80 shares at $130, par value being $100. It appears defendant was trying to get E. J. Haworth, cashier of plaintiff bank, to sell this stock to some, one in the community, but on account of the condition of the bank, Haworth advised him he could not handle it at that time, as it would take three or four years for the bank to work out its large loans. However, after the bank received a letter of February 3, 1923, from the Bank Commissioner, stating that if it did not reduce the Johnson $4,000 note and the Dixon $4,187.40 note, both of these men being officers of the bank, an assessment would be made against the capital stock of the bank. E. J. Haworth wrote defendant the following letter from Wichita, Kan.:

"The Southwest State Bank

"Capital and surplus $270,000. M. C. Naftzger, V. President. S. B. Amidon, V. President.

"L. S. Naftzger, President, H. M. Pickler, Cashier, W. L. Feldner, Assistant Cashier.

"Wichita, Kan., February 10, 1922, Dec. Ex. 4 JLF.

"Mr. P. A. Johnson, Coldwater, Kansas. Dear Mr. Johnson:—In view of the fact of the recent examination report and of conditions in general I have decided to make you the following proposition relative to the bank at Gate: I will pay you $130 per share as follows: $10 per share to be taken in charge-off paper; The capital stock reduced to $10,000, the amount of the reduction taken out in paper and applied in payment as far as it will go. The balance to be paid in cash less two notes held by the Southwest Bank totalling $10,500, your personal note of $5.500, and that of Sappington and Dixon $5,000. This proposition is made after consulting the Southwest State Bank, and getting their co-operation in furnishing money to put over the above deal. I feel that something must be done at once to comply with the Banking Department's requirement. It can't run along this way any longer and something must be done to relieve the situation here at Gate. I am writing Mr. Sappington relative to this matter, and I want

you to reply to me at Gate as soon as possible. There are some other things I will take up with you in person when I see you. If this meets with your approval, you and Mr. Sappington arrange a date that you can meet at Gate, and I will have a representative of the banking board present, and close the entire transaction up without any further delay. Yours very truly, E. I. Haworth,"

It appears Johnson, this defendant, Sappington, Dixon, and Duval were interested in a contract in New Mexico, and Johnson was liable on this Sappington and Dixon note. It will be noted this letter was not written on the stationery of the plaintiff bank. Haworth did not sign the letter as cashier of the plaintiff bank, but used the personal pronoun "I," "I will pay you $130 per share," etc.

It appears after some length of time Johnson, Sappington, and Duval met Haworth at the plaintiff bank. Johnson turned over his 80 shares of stock to Haworth; Sappington turned over 40 shares of his 80 to Haworth, subsequently obtained the $5,500 Johnson note from the Wichita Bank, and the $5.000 note of Sappington, Dixon, and Johnson, and delivered them to Johnson, and further deposited to the credit of "Johnson and Sappington" $3,100. Sappington could not deliver at this time his other 40 shares, as they had been pledged as security for a loan elsewhere.

Johnson's defense was that Haworth agreed to cancel and deliver the $4,000 Johnson note held by plaintiff bank, and this promise and the acts of Haworth were the promise and acts of the bank, or, at least, the bank was notified of the acts of Haworth, and received the benefits of the transaction. If any benefits ever accrued to the plaintiff bank by reason of Johnson's connection with it, it does not appear from the record. It may be, however, that some benefit accrued to the bank by his leaving it, but what that benefit was does not appear. There is no merit whatsoever in defendant's contention that the acts of Haworth were the acts of the bank. Defendant, as president of the bank, knew and should have known, better than any other person, that the cashier of the bank could not bind the bank in such a transaction. If defendant desired to deal with the bank, looking to the transfer of his stock and his release of liability, he, as president, had the power to call a meeting of the board of directors, and there consummate the deal, as he was still president when this deal was consummated, and so remained for sometime thereafter, or until the

bank was reorganized, its capital stock reduced from $20,000 to $10,000, a new president and board of directors elected, and several thousand dollars' worth of bad loans charged off. A careful review of all the evidence fails to disclose any connection of the plaintiff bank with the Johnson, Sappington, Dixon, Haworth deal, and it is useless to cumber this opinion with its recital, and in view of all the evidence, we can find no error of the court in sustaining the demurrer of the plaintiff to the evidence of the defendant, and directing a verdict for plaintiff.

"The question presented to a trial court on a motion to direct a verdict is, whether admitting the truth of all the evidence which has been given in favor of the party against whom the action is contemplated, together with such inferences and conclusions as may be reasonably drawn from it, there is enough competent evidence to reasonably sustain a verdict should the jury find in accordance therewith." Bank of Commerce of Ralston v. Gaskill, 44 Okla. 728, 145 Pac. 1131; Frick-Reid Supply Co. v. Hunter, 47 Okla. 151, 148 Pac. 83; Case v. Posey, 55 Okla. 163, 154 Pac. 1165; Remarkis v. Reid, 64 Okla. 104, 166 Pac. 728; Hargrove v. Bourne, 47 Okla. 484, 150 Pac. 121.

"The court should direct a verdict where a different verdict would be set aside as contrary to the evidence." Metropolitan Ry. Co. v. Fonville, 19 Okla. 283, 91 Pac. 902; Guss v. Federal Trust Co., 19 Okla. 138, 91 Pac. 1045. See Eves Tall Chief v. Aaron, 87 Okla. 230, 209 Pac. 915.

There being no competent evidence introduced to support the defense of defendant's answer, it was not error for the court to sustain a demurrer to defendant's evidence and direct a verdict, and the judgment of the trial court is therefore affirmed.

By the Court: It is so ordered..