Harry J. DAVIS and Elmore A. Page,
Plaintiffs in Error,

v.

The STANDARD INSURANCE COMPANY,
Defendant in Error.

No. 36303.

Supreme Court of Oklahoma.

Feb. 15, 1955.

Wheeler & Wheeler, by John Wheeler, Jr., Tulsa, for plaintiffs in error.

Sanders & McElroy, by David H. Sanders, and Floyd Walker, Tulsa, for defendant in error.

DAVISON, Justice.

This is an action wherein the plaintiff, The Standard Insurance Company, sought judgment for $6,817.76, said sum being in the hands of the court clerk, as against the defendants, Harry J. Davis and Elmore A. Page. By way of answer, the defend-

ants alleged that $1,704.44 thereof was due to Page as an attorney fee for the creation of said fund.

The defendant, Davis, received a compensable personal injury arising out of and in the course of his employment with an insured of the Standard Insurance Company. The injury was the result of the negligence of a third-party tort-feasor. Davis filed, in the Industrial Commission, his claim for compensation and his election to proceed first against the third party in a common-law action for damages, as provided by 85 O.S.1951 § 44(a). All of his hospital and medical expense was being paid by the plaintiff, herein. Upon the filing of the notice of election, the following written agreement was entered into between the parties.

"This Agreement made and entered into on this 16th day of Nov. 1950 between Harry J. Davis and his attorney, first party, and J. L. Heath Company and the Standard Insurance Company, second party, witnesseth:

"The first party on October 16, 1950, while employed by the J. L. Heath Company as a plumber, did sustain certain personal injuries when he was struck and caught by various pieces of material when the roof of a building, located at the northwest corner of Harvard and Admiral Boulevard, in the City of Tulsa, collapsed and fell.

"That the first party was thereby disabled from performing the duties of his occupation and was hospitalized and placed under medical treatment, and, the first party, understanding that The Standard Insurance Company of Tulsa, Oklahoma, is the Compensation Insurance Carrier for his employer, J. L. Heath Company, and being of the belief that his injury constitutes compensable claim under the Workmen's Compensation Act of Oklahoma, did on 2nd day of Nov., 1950 file with the State Industrial Commission, his first notice of injury and claim for compensation arising out of said accident of 1950.

"That the first party, believing that he might have some claim or action at law against certain other parties, did subsequent to 2nd day of Nov. 1950, file with the State Industrial Commission on a motion that his claim for compensation be held in abeyance pending the outcome of his suit of claim at law against which said third party and their agents and employees, stating his intention in said motion to reserve his future rights or remedies under the compensation law in the event he fails to recover from said third parties, and the amount equal to the benefits to which he would be entitled under the compensation law.

"Therefore, in consideration of payments by second parties of the sum of $25.00 per week, made and to be made, in lieu of compensation, during the period of first party's disability or until his claim against the third party has terminated. The first party does hereby agree to reimburse the second party to the full extent of any and all such payments made, and for all medical, hospital, nursing, and drug expense incurred in his behalf by said second party. Only, in the event said first party makes recovery against said third parties in his suit or claim against them for more than he would be entitled to under the Workmen's Compensation Act. First Party further agrees that he will make no settlement nor other disposition of, nor sign any release, satisfaction, or dismissal of, its claim or cause of action against third party without having first obtained the written consent and approval of the second party.

"It is mutually understood and agreed by and between the parties hereto, that the first party reserves his right as against the second parties, in the event any recovery which he may make from third parties, is less than the amount to which the first party would be entitled under the compensation laws of Oklahoma, and further that any payments made by the second parties in lieu of compensation

or for expense of medical, nursing, hospital or drugs of and for the first party shall be credited against any award or order which the said first party might receive or become entitled to under the compensation laws of Oklahoma. It is further mutually understood and agreed by and between the parties hereto that the first party has not forfeited any rights of subrogation against third parties, for payments made as herein before provided nor for expenses incurred as a result of any liability imposed on said second parties by the Workmen's Compensation Act of Oklahoma.

"In Witness Whereof, we have set our hands on this 16th day of Nov. 1950.

"The Standard Ins. Co.    Harry J. Davis  (Sgd)
"Second Parties         First Party

"By (Sgd) F. L. Walker    (Sgd) Elmore A. Page
"Their Attorneys         Attorney for First Party"

The defendant here, Elmore A. Page, as attorney represented the defendant Davis in the ensuing litigation, which resulted in a settlement and compromise whereby said Davis was paid $42,100. Twenty five per cent of that amount was the agreed contingent fee for his attorney's services.

The advance made by the insurance company to Davis under the terms of the above quoted written contract totaled $6,817.76 and that amount was paid to the clerk of the court out of said $42,100 settlement. One fourth of the remainder was paid to Page as attorney fees but he was never paid any part of the deposit. After the damage suit was filed but before it was settled and at about the time it was set for trial, Page had several conversations with Mr. Walker, the agent of the insurance company with reference to the hiring of another lawyer to represent the company and to assist in the trial of the case. Walker communicated with his superiors about the matter and the conclusion reached was described by Page in his capacity as a witness, as follows:

"And I signed the contract with Mr. Davis in my representative capacity as his attorney. Subsequent to that time I did file a petition in the courts of Tulsa County, suing Patterson Steel Company, after I had held the proceedings in the Industrial Case in abeyance, pending this contemplated suit which was filed. There were numerous hearings in court on the pleadings and various phases of that lawsuit. All during the course and period of this time I did talk to Mr. Walker regarding the position of our lawsuit in the District Court, and discussed several phases of the lawsuit with him. I have gone to his office on several occasions and I believe he has been in mine and I know we had numerous conversations respecting this lawsuit and their position in the matter. In any event, after the case was set for jury trial, or prior, it may have been prior to the time of the jury trial, that it was set on the docket, as Mr. Walker testified, I did go to his office and had a conversation with him respecting the hiring of another attorney. The best of my memory, I think that first conversation took place sometime in January of 1951, I could be mistaken, but in any event I did go to his office and I advised Mr. Walker—I said, 'you have quite a lot of money involved in this lawsuit, if we lose this lawsuit against the Patterson Steel Company, possibility that it might cost your company in the neighborhood of twenty thousand dollars. If we lost that, of course, we had reserved our right to come back to the Standard Insurance Company and recover for these injuries, compensation injuries. Floyd said, 'Yes, that is right,' and I said, 'You should have an attorney to represent your interest in that matter.'

"Floyd said that might be an idea. I believe at that time he did say that he would take it up with his superiors. * * * I do know that the last time I talked to Mr. Walker respecting that, I believe I did call him on the telephone, I asked Mr. Walker if they decided on what attorney would be satisfactory for both myself and his company. * * * Mr. Walker told,

me at that time that they did not intend to hire a lawyer to represent their company and that I was good enough for him and that they were not going to hire anyone. We talked several minutes about it and the gist was that they felt they didn't need anyone to represent them and look after their twenty thousand dollars in the lawsuit. That stopped the negotiations, then I proceeded with the handling of the case on my own. As has been testified heretofore, numerous meetings were had respecting settlement in this case, numerous conferences, Standard Insurance Company were advised at all times, in fact, Mr. Walker would call me numerous occasions to determine how we were getting along and finally the case was, just prior to trial before a jury, was finally settled, I believe on the 3rd day of November 1952, for $42,100.00."

At the close of the testimony, the trial court directed a verdict in favor of the plaintiff and defendants have perfected this appeal, presenting two propositions as grounds for reversal. The first is that the trial court committed error in taking the case from the jury. The other is that the defendant Page, is entitled to an attorney fee for having made the fund available.

In considering this controversy, it must be borne in mind that the money advanced to Davis by the insurance company was, in no wise, an obligation under the provisions of the Workmen's Compensation Law. After the notice of election was filed in the compensation case, that matter was held in abeyance until the termination of the common-law action. The possible future liability was probably the inducement for the company entering into the written contract, supra. But the contract itself constituted the agreement between the parties upon which this action is founded.

The facts, therefore, in the instant case distinguish it from the case upon which the defendants primarily rely, Hardware Mutual Casualty Co. v. Butler, 116 Mont. 73, 148 P.2d 563. The cited case involved a situation wherein a compensation award for $8,000 had been made against the employer and a judgment for $2,750 had been rendered against the third-party tort-feasor in an action for wrongful death. In the case at bar, the judgment for damages far exceeded any possible compensation award in the future. The question here has no connection with subrogation either in equity or by statute. It arises solely from the written contract.

No citation of authority is necessary to support the universally accepted rule that a subsequent parol agreement must be executed if it is to have the effect of varying the terms of a written contract. It is difficult indeed, if not impossible, to read into the transactions, the authorization by the insurance company to Walker to contract for the services of the attorney Page or the entry of the parties into such a contract. More formidable, however, than either of these defects as a bar to recovery by defendants, is the fact that the original contract was in writing and no subsequent parol agreement had been fully executed. The defendants agreed "to reimburse (the plaintiff) to the full extent of any and all such payments." This they had not done. The applicable rule of law was discussed in a somewhat similar situation in the early case of Maisen v. Cartwright, 43 Okl. 737, 144 P. 375, wherein the parties, by written contract, agreed to the payment of attorneys' fees and expenses out of the property received from a contested probate case. Subsequently, by parol, the parties agreed to payment in cash in a definite amount. Suit was brought to recover that sum. Demurrer to the petition was sustained. On review, this court cited the cases of Neverman v. Bank of Cass County, 14 Okl. 417, 78 P. 382, and Early v. King, 38 Okl. 206, 135 P. 286, 287. The latter case was quoted as follows:

"To permit the introduction and consideration by the court of the evidence offered by plaintiff would be to do that which the statute inhibits, to wit, permit a contract in writing to be altered otherwise than by another contract in writing, or by an executed parol agree-

ment. If defendant had returned to the plaintiff the $300 in accordance with the claim made by plaintiff, and then had sued to recover it, there would then have been presented the executed parol agreement effective to modify the terms of the contract; but the facts as presented disclose no more than an effort to enforce an executory parol agreement altering and changing the terms of the written contract into which the parties entered. That this cannot be done is clear from the statute and the adjudicated cases. Keokuk Falls Imp. Co. v. Kingsland, etc., Mfg. Co., 5 Okl. 32, 47 P. 484; Liverpool, etc., Ins. Co. v. T. M. Richardson Lumber Co., 11 Okl. 585, 69 P. 938; Moorehead v. Davis, 13 Okl. 166, 73 P. 1103; Neverman et al. v. Bank of Cass County, 14 Okl. 417, 78 P. 382; Guthrie & Western R. Co. v. Rhodes, 19 Okl. 21, 91 P. 1119, 21 L.R.A.,N.S., 490; McNinch v. Northwest Thresher Co., 23 Okl. 386, 100 P. 524, 138 Am. St.Rep. 803."

By their failure to make the reimbursement to plaintiff, the defendants failed to fully execute the alleged parol agreement. Because such parol agreement could not be enforced, there is no necessity of discussing the lack of consideration for it, in that the defendants by parol agreed to do only that which, under the terms of the written contract, they were already bound to do.

As to the propriety of the directed verdict for plaintiff, the applicable rule was quoted in the case of Johnson v. State Bank of Commerce of Gate, 123 Okl. 127, 252 P. 59, 60, as follows:

"'The question presented to a trial court on a motion to direct a verdict is whether, admitting the truth of all the evidence which has been given in favor of the party against whom the action is contemplated, together with such inferences and conclusions as may be reasonably drawn from it, there is enough competent evidence to reasonably sustain a verdict, should the jury find in accordance therewith.' Bank of Commerce of Ralston v. Gaskill, 44 Okl. 728, 145 P. 1131; Frick-Reid Supply Co. v. Hunter, 47 Okl. 151, 148 P. 83; Case v. Posey, 55 Okl. 163, 154 P. 1165; Remarkis v. Reid, 64 Okl. 104, 166 P. 728; Hargrove v. Bourne, 47 Okl. 484, 150 P. 121.

"'The court should direct a verdict where a different verdict would be set aside as contrary to the evidence.' Metropolitan Ry. Co. v. Fonville, 19 Okl. 283, 91 P. 902; Guss v. Federal Trust Co., 19 Okl. 138, 91 P. 1045."

That rule is decisive of the question here. The judgment is affirmed.

JOHNSON, C. J., WILLIAMS, V. C. J., and WELCH, CORN, BLACKBIRD, and JACKSON, JJ., concur.