## Cooper v. Ft. Smith & W. R. Co.

No. 189.  Opinion Filed January 29, 1909.

(99 Pac. 785).

1.   **CORPORATIONS— Foreign Corporations — "Carrying on Business"—Contracts—Compliance With Statutory Requirements.** An answer setting up a plea in bar to a suit on promissory note given in aid of the construction of plaintiff's line of railroad which alleges, in substance, that at the time it was executed plaintiff was and still is a foreign corporation, and as such has failed to comply with Wilson's Rev. & Ann. St. Okla. 1903, secs. 1225 and 1227, is bad, as it was not the intent of the Legislature, by inhibiting such corporation from doing business in the state, to deprive it of the right to sue in its courts or to render void contracts made by it in the state, and a demurrer thereto was properly sustained.

1.   **SAME—Contracts Antedating State Constitution.** Contractual rights accrued prior to the adoption of sections 43 and 44 of

article 9 of the Constitution (Bunn's Ed. secs. 258, 259) are not thereby affected

3.     SUBSCRIPTIONS—Railroad Bonus Notes—Defenses—Fraud. An answer setting up a plea in bar to a suit on a promissory note given in aid of the construction of plaintiff's line of road, which alleges that prior to the execution of the note the payee, then engaged in building a railroad in a westerly direction from a given point in another state through the Indian Territory and in the general direction of Guthrie, Okla., determined to build said road from its then terminus in the Indian Territory to said city, and on that date, unknown to defendant and the citizens of said city, entered into a contract for its construction; that without disclosing that determination said railroad company, by and through its agents and representatives, afterwards caused a public meeting of the citizens of said city to be held, and then and there submitted to them and others interested a proposition to extend its line of road from its then terminus in the Indian Territory to said city and have the same in operation in 18 months, provided they would raise a bonus of $50,000 within 30 days, in the form of promissory notes satisfactory to the payee, to be turned over to it: representing that another city was a strong competitor for the road; that unless satisfactory arrangements were made with it the road would be diverted to some other point, but if the terms of said bonus were complied with, it would build its road to Guthrie: that there was a feeling of rivalry existing between the two cities, which was well known at that time to said railroad company; that said representations were made for the purpose of securing said bonus, and were false and deceptive, and known to be such by the payee, and were intended to, and did, deceive said citizens, including the defendant, and that the note sued on was executed on the strength of such deception—states facts sufficient to constitute a plea in bar of a recovery on said note on the ground of fraud, and a demurrer thereto was improperly sustained.

4.     BILLS AND NOTES—Actions—Answer—Sufficiency. An answer setting up a contract in aid of a plea of nonperformance of a condition precedent to recovery in a suit on a promissory note, which shows on its face no privity, but which said answer avers that said contact was made by one of the parties thereto as the special agent of defendant for the purpose of making said contract, is good as showing privity of defendant thereto such as will enable him to take advantage of its terms, and a demurrer thereto was improperly sustained.

5.     CONTRACTS—Subscriptions—Time as of the Essence of the Contract—Railroad Bonus Note. Although it is provided (Wilson's Rev. & Ann. St. 1903, sec. 809) that "time is never considered as of the essence of a contract. unless by its terms expressly so provided," no particular form of expression is required, but it

must appear from the express provisions contained in such contract that it was the intention of the parties thereto that time should be the essence thereof. And where the answer disclosed that the note sued on contained the stipulation, "Provided always that this note becomes due and payable when said railroad company shall have in operation a line of road from the present terminus of its line in the Indian Territory to the city of Guthrie," and the contract entered into by the note givers and plaintiff prior to the delivery of said note and part thereof fixed the time of completion of said road, which was the only advantage accruing therefrom to said note givers. held, that time was of the essence of the contract, and the completion of said road a condition precedent to a right to recover on said note.

6.   SUBSCRIPTIONS—Validity—Railroad Bonus Note.   A promissory note payable to a railroad company in aid of the construction of its line of road is not void as against public policy.

(Syllabus by the Court.)

*Error from Logan County Court; J. C. Strang, Judge.*

Action by the Ft. Smith & Western Railroad Company against O. P. Cooper. Judgment for plaintiff, and defendant brings error. Reversed and remanded.

On November 26, 1907, the Ft. Smith & Western Railroad Company, defendant in error, plaintiff below, sued O. P. Cooper, plaintiff in error, defendant below, in the county court of Logan county, on the following promissory note:

"$250.00.                    Guthrie, O. T. Jan. 5, 1902.

"The undersigned promises to pay to the order of Fort Smith and Western Railroad Company, two hundred and fifty dollars, at the office of said company in Guthrie, Oklahoma.

"Provided, always, that this note becomes due and payable when said railroad company shall have in operation a line of railroad from the present terminus of its line in the Indian Territory to the City of Guthrie, Oklahoma Territory.

"[Signed] O. P. COOPER."

—the same being one of many, aggregating some $50,000, given by various citizens of Guthrie in aid of the construction of the railroad of defendant in error.

On December 6, 1907, defendant filed answer, and afterwards an amendment thereto, which was demurred to by defendant in error, and sustained; and, plaintiff in error electing to stand on his

answer, judgment was rendered in favor of defendant in error and against plaintiff in error for the amount of said note, with interest thereon from the date of its execution, from which said judgment plaintiff in error has prosecuted an appeal to this court.

*T. C. Whitely, C. G. Hornor,* and *Devereux & Hildreth,* for plaintiff in error, contended, *inter alia,* that the railroad company having failed to comply with the statutes and Constitution of Oklahoma, the contract is void and the action can not be maintained. Wilson's Rev. & Ann. St. 1903, §§ 1225, 1227; Const., art. 9, §§ 43, 44; *Tri-State Amusement Co. v. Forest Park Amusement Co.,* 192 Mo. 404; *John Deere Plow Co. v. Wyland,* 69 Kan. 255; *Chicago Building Co. v. Myton,* 24 Pa. Sup. 16; *In re Comstock,* 6 Fed. Cas. 244, No. 3078; *Diamond Glue Co. v. U. S. Glue Co.,* 103 Fed. 838, 187 U. S. 611; *Cincinnati, etc., Co. v. Rosenthal,* 55 Ill. 85; *Bank v. Page,* 6 Or. 431; *Haughey v. Loan Ass'n.,* 140 Ala. 245; *Chattanooga B. & L. Ass'n. v. Denson,* 189 U. S. 408; *Woodstock Iron Co. v. Extension Company,* 129 U. S. 654.

*Dale & Bierer, Benj. F. Hegler,* and *A. C. Dustin,* for defendant in error.—

Sections 1225-1227, Wilson's Statutes do not apply to foreign railroad corporations, as appears from an examination of sections 1022, 1037, 1039, 1067, 4269, which are applicable. Lewis' Sutherland on Statutory Construction (2nd Ed.) § 387; *Boyer v. Northern Pac. Ry. Co.,* 8 Id. 74. Even if said sections 1225-1227 do so apply, still failure to comply with same does not invalidate contracts for a foreign corporation. *American Buttonhole Co. v. Moore* (Dak. 1881) 8 N. W. 131; *Wright v. Lee* (S. Dak.) 51 N. W. 706; *Railway Co. v. Fire Ass'n,* 55 Ark. 163; *Cook v. Rome Brick Co.,* 98 Ala. 409; *Mill Co. v. Bartlett* (N. Dak.) 54 N. W. 544; Wilson's Rev. & Ann. St. 1903, § 933; *Bank v. Matthews,* 98 U. S. 628; *Bank v. Whitney,* 103 U. S. 99; *Reynolds v. Bank,* 112 U. S. 405; *Blodgett v. Zinc Co.,* 120 Fed. 893; *Paugborn v. Westlake,* 36 Iowa 546; *Mining Co. v. U. S. Fidelity & Guaranty Co.,* 146 Fed. 437. The making of the note sued on did not constitute transacting "any business within this territory,"

within the provisions of the statute. *Diamond Glue Co. v. U. S. Glue Co.* 187 U. S. 611; *Hogan v. St. Louis,* 176 Mo. 149; *Norton v. Thomas* (Texas) 93 S. W. 711. Const. of Okla., art. 9, §§ 43, 44, constitute no bar to the action on notes. Const. Schedule, § 1; *Sherwood v. Wilkins,* 65 Ark. 312.

For a full discussion of other questions involved counsel refer to briefs filed in a similar case decided by the territorial Supreme Court, viz: *Guss v. Federal Trust Co.,* 19 Okla. 138, 91 Pac. 1045.

No copies of those briefs reached the reporter.

TURNER, J. (after stating the facts as above). The answer sets up various defenses to said note, the first of which is that the defendant in error (hereafter called plaintiff) "is now and was at the time said notes were given, and at the time this action was instituted, and has been continuously, a foreign corporation, created and organized under the laws of the state of Arkansas," and has failed to comply with the law as laid down in Wilson's Rev. & Ann. St. Okla. 1903, which provides:

"Section 1225: No corporation created or organized under the laws of any other state or territory shall transact any business within this territory, or acquire, hold, and dispose of property, real, personal, or mixed, within this territory, until such corporation shall have filed in the office of the Secretary of the Territory, a duly authenticated copy of its charter or articles of incorporation, and shall have complied with the provisions of this article."

"Section 1227: Such corporations shall appoint an agent, who shall reside at some accessible point in this territory, in the county where the principal business of said corporation shall be carried on, or at some other place in said territory, if such corporation has no principal place of business herein, duly authorized to accept service of process, and upon whom service of process may be made in any action in which said corporation may be a party; and that such an action may be brought in the county where such agent resides or in any county in which the business, or any part of it, out of which said action arose, was transacted; and service upon such agent shall be taken and held as due service upon such corporation. A duly authenticated copy of the appointment or

commission of such agent shall. be filed in the office of the Secretary of the Territory and register of deeds of the county where said agent resides, and a certified copy thereof by the Secretary or register of deeds shall be conclusive evidence of the appointment and authority of such agent."

—and with sections 43 and 44 of article 9 (Bunn's Ed. §§ 258, 259) of the Constitution, which read:

"Section 43: No corporation, foreign or domestic, shall be permitted to do buisness in this state without first filing in the office of the Corporation Commission a list of its stockholders, officers, and directors, with the residence and post office address of, and the amount of stock held by, each. And every foreign corporation shall, before being licensed to do business in the state, designate an agent residing in the state, and service of summons or legal notice may be had on such designated agent and such other agents as now are or may hereafter be provided for by law. Suit may be maintained against a foreign corporation in the county where an agent of such corporation may be found, or in the county of the residence of plaintiff, or in the county where the cause of action may arise."

"Section 44: No foreign corporation shall be authorized to carry on in this state any business which a domestic corporation is prohibited from doing, or be relieved from compliance with any of the requirements made of a similar domestic corporation by the Constitution or laws of the state. Nothing in this article, however, shall restrict or limit the power of the Legislature to impose conditions under which foreign corporations may be licensed to do business in this state."

As the demurrer admits that plaintiff is a foreign corporation and has so failed to comply with the law, does such failure deprive it of the right to bring this suit or render void the note sued on as contended by defendant? We think not.

Section 1225, *supra,* by inhibiting a foreign corporation from transacting any business in this state until it had complied with the law contained in the article of the statute of which said section is a part, did not intend to deprive such corporation of the right to sue in the courts of this state. This was so expressly held in *American Buttonhole Company v. Moore,* 2 Dak. 280, 8 N. W. 131, in construing this statute before its adoption by the

territory of Oklahoma, and is consequently binding on this court. In that case the court said:

"But it must be admitted that the plaintiff had the legal capacity to sue, if that right is not taken away by section 567. Is it thereby taken away?  It is not so expressed in the section, nor is it necessarily implied.  When it is declared by section 567 of the Civil Code, substantially, that no foreign corporation shall 'transact any business' within this territory until it shall have filed a copy of its charter and appointed a resident agent, is a foreign corporation thereby deprived of its right to have the validity of its contracts inquired into and determined by our courts?  The right to sue and be heard is one thing; but the right to have contracts enforced upon trial is another and a quite distinct matter.  In this further view, we are, consequently, confronted with the direct query, to wit:  By inhibiting the transaction of business, did the Legislature mean to deprive these corporations of the capacity to sue?  By the exercise of this power the plaintiff does not seek to 'transact business,' as these words are generally understood, but to enforce alleged rights springing from past business transactions.  Therefore, by no fair or proper implications is such corporation thereby deprived of its right to sue.  The inhibition, at most, extends only to the ordinary transaction of business, and it cannot be construed, by any enlarging process, to embrace and prohibit the exercise of another independent power existing by general comity as well as by express legislation."

*Railway Company v. Fire Association,* 55 Ark. 163, 18 S. W. 43, says:

"Appellees, notwithstanding they are foreign corporations, have a right to litigate in the courts of this state, without complying with the constitutional and statutory provisions which regulate their rights to do business here, because the institution and prosecution of a suit are not doing business, within the meaning of such provision.  *Christian v. Mortgage Co.,* 89 Ala. 198, 7 South. 427; *Ginn v. Mortgage, etc., Co.,* 92 Ala. 135, 8 South. 388; 2 Morawetz on Corp. § 662, and cases cited."

See, also, *Cook v. Rome Brick Company,* 98 Ala. 409, 12 South. 918; *St. L., A. & T. Ry. Co. v. Fire Association of Philadelphia et al.,* 60 Ark. 325, 30 S. W. 350, 28 L. R. A. 83.

Upon this doctrine there seems to be little conflict of au-

thority.   The real conflict of authority arises when we come to consider the question as to whether or not such failure renders void the note sued on.   Chief among the well-considered cases discussing the question is *Wright v. Lee*, 2 S. D. 596, 51 N. W. 706, which involved the construction of two sections of the Code of of South Dakota, one identical to section 1225, the other in substance the same as section 1227, *supra*, and like them adopted from Dakota; and, while we are not bound to follow the construction put upon said sections by said court in said case, it is to our minds persuasive to a high degree, especially as the reasoning of the court is sound and meets our approval.   In that case the contention of appellant was identical to that of plaintiff in error in the case at bar—that the contract was void for the reason that under those sections of the statute a foreign corporation was prohibited from doing business in that state until it had complied with the terms of admission.   After an exhaustive review of the authorities, the court summed up the result of the conflict therein as follows:

"From these cases, and many others which could have been produced, while there is some conflict on the question, it appears that what the Legislature meant in the enactment of the statute in relation to foreign corporations is to be inferred from an examination of the entire act, and the intention, in every instance, is to be the guide to a court in determining whether the particular case should form an exception to the general rule.   That intention may be inferred from all its provisions, in connection with the subject-matter and circumstances.   The object sought to be accomplished exercises a potent influence in determining the meaning of not only the principle, but the minor provisions, of a statute.   To ascertain it fully, a court will be greatly assisted by knowing the mischief intended to be removed or suppressed, or the necessity of any kind which induced the enactment.   In the cases above cited, and in fact all to which our attention has been called by the very able briefs upon the part of the appellants and respondents, all say the object of the statute under consideration are to place foreign corporations within the reach of the process of the courts in the jurisdiction where the corporation is doing business, and to protect parties doing business with them from imposition, and

that the primary object is not to render their acts absolutely void. This object is clearly stated by Morawetz, in his work on Corporations (2d Ed.) § 665, as follows: 'The object of the various statutes providing that foreign corporations, before transacting business, shall comply with specified conditions, such as filing copies of their charters, making statements of their financial condition, appointing agents upon whom process shall be served,' etc., 'is to protect parties dealing with them from imposition, and to secure convenient means of obtaining jurisdiction in the local courts. These statutes place foreign corporations in the same position as domestic corporations in the particulars provided for. It is clearly not the primary purpose of the Legislature in passing the statutes to render the contracts and dealings of corporations which have not complied with the statute void and unenforceable. Hence, when the Legislature has not expressly declared that this result shall follow from a failure to comply with the statute, the courts ought not to imply such a result, unless this be necessary in order to attain the primary object for which the statute was passed.' This, we think, is the better and more reasonable construction of these statutes, and, unless the statute prescribing the prerequisites to the right to do business declares that contracts made by foreign corporations shall be void, the courts should not declare them to be so absolutely. * .* *

"Aided by the light of these able decisions endeavored to be reviewed upon both sides of the question raised in the case at bar, we have come to the conclusion that the constitutional provision and legislative enactment in our state, as quoted above, was not designed or intended as a prohibtion upon foreign corporations to contract in this state to the extent to declare such contracts void, but was merely intended to furnish the means by which our citizens could procure personal judgments against foreign corporations who were their debtors. And while the statute did in terms prohibit the transaction of business until its provisions are complied with, yet, whatever objection there might be made to a foreign corporation for noncompliance, it being a statute regulating a public policy, this objection could not be urged collaterally by a private person, but it must be done by a direct proceeding instituted by the state.

"Following a well-known and established uniform rule, if a person contracts with a corporation in a matter within its corporate powers, the mere making of such contract estops the promisor

from disputing the corporation's regular and complete right to make such a contract."

We are therefore of the opinion that the note sued on is not void, and is unaffected by said sections of the statute, and sections 43 and 44 of article 9 of the Constitution (Bunn's Ed. §§ 258, 259) the latter being adopted since its execution and the contractual rights thereunder accrued.

Entering now upon the merits of the controversy, we find that the plaintiff in error pleads fraud and failure of consideration in bar of the recovery of defendant in error, and the next question for us to determine is whether the answer sets forth facts sufficient to bar a recovery on the ground of fraud, and, if so, a failure of consideration would necessarily follow, and there can be no recovery.

The answer alleges, in substance, that some time prior to January 15, 1902, the Ft. Smith & Western Railroad Company, the payee in the note, a corporation then engaged in building a railroad in a westerly direction from Ft. Smith, Ark., through Indian Territory and in the general direction of Guthrie, Okla., determined and concluded that it would build a line of road from its then terminus in Indian Territory to said city, and on that day, unknown to the defendant or the citizens of Guthrie, entered into a contract in writing with the Frewin-Bambrick Construction Company, a corporation engaged in that work for hire, to build said line of road; that on January 24, 1902, without disclosing the fact that it had determined to extend the said road to Guthrie, said railroad company, by and through its duly authorized and accredited agents and representatives, came to Guthrie and caused a public meeting of its citizens to be held, and then and there submitted to said citizens and others interested a proposition to extend its said line of railroad from its then terminus in Indian Territory to Guthrie, and have it in operation in 18 months, provided said citizens would raise a bonus of $50,000 within 30 days, in the form of promissory notes satisfactory to said company, to be turned over to it; that said agents, on behalf of the said railroad company then and there represented to said meeting that Oklahoma City

was a strong competitor for said road, and wanted it built there, and not to Guthrie, and that unless satisfactory arrangements were made with the citizens of Guthrie the road would be diverted to some point other than Guthrie on the Atchison, Topeka & Santa Fe Railroad, but that if its terms concerning said bonus were complied with it would build to Guthrie, otherwise not, and in all likelihood would build to Oklahoma City, which, with Guthrie, was striving to secure all enterprises which would tend to build up said cities; that it was of great importance to Guthrie to secure the road, and great and irreparable injury to lose it and have it go to Oklahoma City; that this feeling was well known to said agents, who well knew said citizens could easily be frightened into the belief that said road would be built to Oklahoma City instead of to Guthrie, and knew that by making such representation they could impose upon and influence said citizens to take action which they otherwise would not take, and that said representations of said railroad company were made expressly for the purpose of influencing the citizens of Guthrie and other persons interested in said city in subscribing to said bonus; that said representations were false and deceptive, and were known by the said railroad company and its agents to be false, and were intended by said company to deceive the people of Guthrie, including defendant, and that said representations were relied upon and did deceive the citizens of Guthrie and this defendant, who did not know but that said company might build said road to some point other than Guthrie, presumably Oklahoma City, if said terms were not complied with; and, in substance, that the note sued on was executed on the strength of this deception.

In sustaining the demurrer to this plea of fraud, the trial court, in effect, held that it failed to state facts sufficient to bar a recovery on that ground. In so ruling, we are of the opinion that the court erred, and that the facts set forth in said answer are ample to sustain the plea. In effect, the plea alleges that the proposition was, on the part of the railroad to the citizens of Guthrie, that if you will pay us $50,000 we will extend our rail-

road to your city, otherwise we will divert it to some other point, and probably to a rival city; that at the time the railroad company knew it had already contracted to extend its line to Guthrie, that it had "determined and concluded" to build there, and that it did not intend to divert it to some other point; that the citizens of Guthrie were ignorant of those facts; that had the railroad company not made this false representation it could not have secured a dollar from the citizens of Guthrie in aid of the building of the road; that, as it was, it extracted, by virtue of this deception, the note sued on, with some $50,000 of other notes, in aid of its construction. Any such trick as that is fraud.

Kerr on Fraud and Mistake, p. 42, says:

"All surprises, trick, cunning, dissembling, and other unfair way that is used to cheat any one is considered as fraud."

14 Enc. of Law, 23, says:

"The clearest cases of actual fraud, and those with which the courts generally have to deal, are cases in which a person has made a positive misrepresentation or misstatement as to the existence or nonexistence of a particular fact. In such a case, he is clearly guilty of fraud both at law and in equity, if the representation was as to material fact and was false; if it was of such a character that the other party had a right to rely upon it; if it was accompanied by knowledge that it was false, or what the law regards as equivalent to actual knowledge, and by an intent to deceive; if it was relied upon by the other party, and did in fact deceive; and if he has sustained damage. Under such circumstances, the misrepresentation is ground for an action of deceit to recover the damages sustained, for rescission of a contract at law, and for rescission of a contract or other relief in equity; the subject-matter of a false representation is not generally material, so long as the representation is accompanied by the elements of fraud stated above. Representations relied upon as constituting fraud are generally connected with some contract, and constitute the inducement for entering into same. * * *"

Speaking as to the party defrauded, same, on page 140, says:

"* * * That it is enough for him to show that he has been induced by material false and fraudulent representations to enter into a contract which he would not have entered into but for such representations." Citing authorities.

And so we understand the rule to be that where the pleader shows, as in this case, that he has been induced by material false and fraudulent representations to enter into a contract which he would not have entered into but for such representations, he thereby pleads sufficient facts to bar a recovery on the ground of fraud. This is a doctrine of easy application, and has been applied in numerous instances to every phase of human transactions.

In *James Stewart v. David Lester,* 49 Hun, 58, 1 N. Y. Supp. 699, defendant refused to perform the contract on the ground of fraud, and offered to prove that he was induced to enter into the contract by false and fraudulent representations made by the plaintiff, at the time the contract was entered into, to the effect that the plaintiff had never offered the farm in question for a price less than $8,500, while, on the contrary, he had offered it on numerous occasions in the market for $6,000; that such representation was false, and known by the plaintiff to be false at the time he made the same; that the defendant relied upon such representation in making the contract, and would not have entered into the same but for the false representation. It was held that the facts which defendant offered to prove constituted a bar to the recovery in the action. In that case it was further held that if either party to a contract make a collateral statement in the course of negotiations as to the existence or nonexistence of a particular fact material to the one who relies upon it, if the same turn out to be untrue and was falsely and fraudulently made, it will vitiate the contract if relied upon as true, and if the party who relies upon it would not have entered into the contract but for such statement. As a test as to whether or not the statement relied upon is material, the court, in passing, quoting approvingly from *Smith v. Countryman,* 30 N. Y. 670, says:

"* * * That the fraud which will vitiate a contract must be material; that it must relate distinctly and directly to the contract, and must affect its very essence and substance. Mr. Parsons, in his work on Contracts, gives the rule in this language: 'If the fraud be such that, had it not been practiced, the contract

would not have been made, or the transaction completed, then it is material to it.' "

In an English case (*Canham v. Barry*, 15 C. B. 597) the gauge by which the materiality of a statement is to be determined is stated, in substance, as follows: A contract may be avoided by a false and fraudulent representation, though not relating directly to the nature and character of its subject-matter, if it is so closely connected with the contract that the party sued would not, but for the representations, have entered into it, and was induced to enter into it, to the knowledge of the other party, by such representation—citing *Hammond v. Pennock*, 61 N. Y. 152; *Moens v. Heyworth*, 10 M. & W. 147; *Valton v. National Fund Life Ass'n Co.*, 20 N. Y. 32. Further in that case, the court says:

"Under the rule as stated in these cases, either party to a contract may make a collateral statement, made by the other party during the negotiations as to the existence or nonexistence of a particular fact, a material one in his own judgment. So if it turns out to be untrue, and was falsely and fradulently made, it will vitiate the contract if he relied upon the same as true, and would not have entered into the contract but for the statement. * * * The same state of facts which will enable a party to avoid a contract in a court of equity for fraud will constitute a proper defense at law in an action brought against the defrauded party to recover damages for nonperformance."

In *Valton v. National Fund Life Assurance Company*, 20 N. Y. 32, it was held that a fraudulent misrepresentation made by the assured to the insurer, upon his application for a policy, though not material to the risk, yet material in the judgment of the insurer, and which induced him to take the risk, avoided the policy; that the misrepresentation amounted to a fraud, not on the ground of the misrepresentation affecting the nature of the risk, but because it induced a confidence without which the party would not have acted. In that case the court says:

"The requests to charge, considered in connection with a charge given, present the question whether fraudulent representations made by the assured to the insurer upon his application for

a policy, though not material to the risk, yet material in the judgment of the insurer, and which induced him to take the risk, will avoid the policy. This question has not been determined by any adjudged case in this state, so far as I have been able to discover. The elementary writers hold that the policy may be avoided." Citing 1 Arnold on Insurance, § 189; 2 Duer, 681, 682; 3 Kent, 282.

. If such fraudulent representations made by the insured to the insurer, material in the judgment of the latter, and which induced him to take the risk, will avoid a policy of insurance, we cannot see why such fraudulent representations, material in the judgment of the note-maker, and which induced him to make the note, will not avoid the note when made.

*John C. Smith v. William Countryman,* 30 N. Y. 670, was an action to recover damages for the breach of a contract to deliver a quantity of hops. To induce a sale of the hops, the buyer represented that he had purchased E.'s hops for 12½ cents a pound. The seller was ignorant of the price of hops, reluctant to sell, and relying on such representation and believing it to be true, and having confidence in the prudence and judgment of E., agreed to sell his hops to the buyer for 12½ cents a pound. The statement as to the purchase of E.'s hops was untrue. It was held that the seller was at liberty to refuse to fulfill the contract on the discovery of fraud. The court, in passing, quoted approvingly from the language of Mr. Justice Story in *Doggett v. Emerson,* 3 Story, 733, Fed. Cas. No. 3,960, where the eminent jurist said:

"It is equally promotive of sound morals, fair dealing, and public justice and policy that every vendor should distinctly comprehend, not only that good faith should reign over all his conduct in relation to the sale, but that there should be the most scrupulous good faith, an exalted honesty, or, as it is often felicitously expressed, *uberrima fides,* in every representation made by him as an inducement to the sale. He should literally, in his representation, tell the truth, the whole truth and nothing but the truth. If his representation is false in any one substantial circumstance going to the inducement or essence of the bargain, and the vendee is thereby misled, the sale is voidable, and it is usually immaterial

whether the representation be wilfully and designedly false or ignorantly and negligently untrue. The vendor acts at his peril, and is bound by every syllable he utters or proclaims, or knowingly impresses upon the vendee, as a true or decisive motive for the bargain."

We believe that what has just been said as true between the vendor and the vendee is equally true between the payee and payor of a note, and that where, as in this case, the payee seeks a gratuity at the hands of the payor, he is bound to exercise the most scrupulous good faith and exalted honesty in every representation made by him as an inducement to secure the gift. If the representations are false in any one substantial circumstance going to induce the execution of the note, by which the promisor is misled into the execution of the note and without which he would not have executed the note or agreed to pay the bonus, the note is voidable upon the discovery of the fraud.

*Harlow v. La Brum,* 82 Hun, 292, 31 N. Y. Supp. 487, affirmed 151 N. Y. 278, 45 N. E. 859, was a suit to dissolve a coexisting partnership and for an accounting of partners. The complaint set out written articles of copartnership, which the answer did not deny, but set up as a defense that defendant was induced to enter into the copartnership by the fraudulent representation of the plaintiff that a stock of merchandise which he put into such copartnership cost the sum of $1,890.05, an undivided half of which would belong to the defendant under such articles of copartnership, and against which defendant put in the sum of $850 in cash and his notes for $1,150, and alleged that the merchandise in fact cost the plaintiff the sum of $1,134, which fact the plaintiff well knew at the time of making such representations, and of which defendant was wholly ignorant. The court held the contract of copartnership void *ab initio,* and, in passing, quoted approvingly from *Fairchild v. McMahan,* 139 N. Y. 290, 34 N. E. 779, 36 Am. St. Rep. 701, where the court, speaking through Mr. Justice O'Brien, said:

"But the question here is not one arising out of a representation as to value. The representation was with respect to a

fact which might, in the ordinary course of business, influence the action and control the judgment of a purchaser, namely, the price paid for the property about to be sold by the vendor. * * * And so we think that a false statement with respect to the price paid under such circumstances, which is intended to influence the purchaser and does influence him, constitutes a sufficient basis for the finding of fraud."

Citing in support of this contention *Sandford v. Handy,* 23 Wend. (N. Y.) 260; *Van Epps v. Harrison,* 5 Hill (N. Y.) 63, 40 Am. Dec. 314; *Smith v. Countryman,* 30 N. Y. 655; *Hammond v. Pennock,* 61 N. Y. 151; *Goldenberg v. Hoffman,* 69 N. Y. 326.

This doctrine is laid down in *Engeman v. Taylor et al.,* 46 W. Va. 669, 33 S. E. 922, where the court, quoting from 2 Pomeroy, Equity Jurisprudence, says:

"Any contract, the making of which is induced by fraud of either party, practiced upon the other at the time the contract is made, or while negotiations in regard to it are being carried on, is voidable, and may be rescinded at the election of the party defrauded. This is the most frequent ground for rescission, and may consist either of false representations or fraudulent concealment in respect to the subject-matter of the contract."

But it might be contended that the misrepresentation here relied upon as vitiating this contract, i. e., that if the bonus notes were not given the road would not be built to Guthrie, but probably to a rival town, was simply a misstatement of an intention and not a fact, and hence not sufficient for that purpose. That there must be a misstatement of a material fact goes without further saying, but is not the misstatement of an intention a fact? Is it not a misstatement of the state of mind, and is not the state of a man's mind a fact? *Edgington v. Fitzmaurice* (1884) 29 Chan. Div. 459, 55 L. J. Ch. 650, is directly in point. In that case the directors of a company issued a prospectus inviting subscriptions for debentures, stating the object of the issue to be to complete alterations in the buildings of the company, to purchase horses and vans, and to develop its trade. The real object of the loan was to enable the directors to pay off pressing liabilities.

The plaintiff advanced money on some of the debentures under the erroneous belief that the prospectus offered a charge upon the property of the company, and would not have advanced his money but for such belief, but that he also relied upon the statements contained in the prospectus. The company became insolvent, and, in an action for deceit to recover the money so advanced, the court, affirming the decree of Judge Denman, held that the misstatement of the objects for which the debentures were issued was a material misstatement of fact, influencing the conduct of the plaintiff, and rendered the directors liable in the action, although the plaintiff was also influenced by his own mistake. The court, through Bowen, L. J., in speaking of the misrepresentation of the intention of the company as to how the money was to be applied, said:

"There must be a misstatement of an existing fact; but the statement of a man's mind is as much a fact as the state of his digestion. It is true that it is very difficult to prove what the state of a man's mind at a particular time is, but if it can be ascertained it is as much a fact as anything else. A misrepresentation as to the state of a man's mind is therefore a misstatement of fact."

See Webb's Pollock on Torts, 359.

Hence we say that if defendant was misled into executing the note sued on by the false and fraudulent representations of plaintiff as to the state of its intentions with reference to the point to which its road was to be extended, as in his answer he says he was, then plaintiff was guilty of making a material misrepresentation of such fact as will vitiate the contract and release defendant from such promise to pay.

Owing to the fact that fraud is so protean in shape, it is difficult, if not impossible, to find a case corresponding exactly in point of facts with the case under consideration. We think, however, that the court in *Woodstock Iron Company v. Richmond & Danville Extension Company*, 129 U. S. 643, 9 Sup. Ct. 402, 32 L. Ed. 819, in passing, touches upon the principle just announced. In that case the Supreme Court, in declaring void

contracts made to influence railroad companies in selecting their
routes and locating their depots and stations by donations of lands
and moneys to some of its directors or agents, cites *Bestor v.
Wathen,* 60 Ill. 138, where it appeared that in 1849 the Legisla-
ture of Illinois incorporated a company to build a railroad from
a point on the Mississippi river to Peoria, and later its charter
was amended so as to authorize the extension of the road from
Peoria eastward to the state line.   Later the company made a
contract with the construction company which undertook the con-
struction and equipment of the road.   While engaged upon the
work, the members of the firm, together with the president of the
railroad company and one of its directors and its construction agent
entered into a contract with the defendants by which the latter,
being the owner of 160 acres of land, agreed, in consideration that
the road then being constructed should cross the Illinois Cen-
tral Railroad where the land was situated, the land would
be laid out in town lots and sold, and after the proceeds to a
certain amount had been received, which were to be retained by
defendants, a conveyance of an undivided half of the residue would
be made to the other parties.   The greater part of the considera-
tion for this agreement was the location of the road.   The road
was accordingly built and the land sold, and later plaintiffs filed
a bill against the defendant for an accounting and conveyance of
the undivided half of the lots unsold.   The court held the con-
tract void as against public policy and dismissed the suit, and
the decree in this respect was affirmed by the Supreme Court of
the state.   The court, in passing, quoting approvingly from that
case, said:

"Now, if this was the best line for crossing the Illinois Cen-
tral, considered with reference to the interest of the stockholders
and of the public, then it was the duty of the officers of the
company to establish it there; and if they intended to do so be-
cause it was the proper line, but professed to be hesitating be-
tween this and another line in order to secure to themselves the con-
tract under consideration, as is somewhat indicated by the evi-
dence, then they were practicing a species of fraud upon the de-

fendants, and using a false pretext in order to acquire defendant's property without consideration."

To be sure, *Bestor v. Wathen* was a case in which the officers of the corporation, contrary to the interests of the stockholders, deflected the line of road for their own private gain. This is not such a case as that, but the comment of the court in that case is equally applicable to this case. In this case we say that if this railroad company, acting through its agents and servants, as charged in the answer and admitted on demurrer, professed to be hesitating between extending its line to Oklahoma City or Guthrie, and misrepresented its intentions, in order to secure the bonus notes under consideration, when in truth and in fact, unknown to the note-givers, it had already contracted to extend its line to Guthrie, and it was its intention to go there, it was practicing a species of fraud upon defendant, and using false representations and false pretenses in order to acquire his property without consideration, and will not be permitted to recover in this court. We are therefore of the opinion that the answer states facts sufficient to bar a recovery on the ground of fraud.

It is next contended that as the answer further states that at the meeting aforesaid a motion was put and voted upon by the citizens of Guthrie, there assembled; that said proposition was accepted; that thereupon the Guthrie Club, a civic organization in said city interested in the development thereof, took charge of and assumed the responsibility to and did raise the sum of $50,000, in the form of bonus notes; and that on February 20, 1902, after said sum had been raised which included the note sued on, and said club "acting as the special agent of the subscribers to said donation, including these defendants, and for the special purpose of making the contract now referred to and not otherwise," entered into a written contract with said railroad company requiring it in consideration, among other things, of the surrender to it by said club of said notes, to complete its entire grade for its line of road from the then terminus thereof in the Indian Territory to the city of Guthrie, within 15 months from February

1, 1902, and have said line constructed and in operation within 18 months from that date; and that as said answer avers that time is of the essence of said contract, and that said railroad company had wholly failed to complete its entire grade within that time, or even up to the time of answer filed, and has also failed to have said road constructed and in operation within 18 months from that date according to the terms of said contract— that the court erred in sustaining the demurrer thereto for the reason, in substance, that it disclosed defendant to be privy to said contract and had a right to avail himself of its terms.

We are of the opinion that no privy is disclosed on the face of said contract. This was, in substance, so held in *Guss v. Trust Company,* 19 Okla. 138, 91 Pac. 1045, which was a suit by defendant in error, on one of these bonus notes, where this same question was raised, and we see no reason to disturb the ruling.

The question, then is, is the averment in the answer that; "for the special purpose of making said contract and not otherwise," the Guthrie Club was "acting as the special agent of the subscribers of said donation, including this defendant," sufficient for that purpose? We think it is, and which, when proven on the trial, is sufficient to entitle him to take advantage of its terms. This he may do by parol, notwithstanding the rule that a contract in writing may not be contradicted or varied by parol evidence. Such proof does not contradict the writing, but is only explanatory thereof as going to show that the agent who made the contract in his own name was in fact acting for another. This was so held in *Rankin v. Blaine County Bank,* 20 Okla. 68, 93 Pac. 536, where this court, speaking through Mr. Justice Kane, in the first paragraph of the syllabus, said:

"A principal may maintain an action on a written contract made by his agent in his own name, and evidence may properly be admitted to show that the principal was the real party in interest, notwithstanding the rule of law that an agreement reduced to writing may not be contradicted or varied by parol evidence."

See, also, *Ford v. Williams,* 21 How. 287, 16 L. Ed. 36.

*Shuetze et al v. Bailey et al.,* 40 Mo. 69, was a suit upon a

contract for one-half the cost of a party wall. It recited that it was "between Kenneth MacKinzie, agent for Volney S. Stephenson, of the first part, and George Bailey of the second part," and witnessed that whereas, they were proprietors of certain adjoining lots in a certain city, party of the second part agreed to pay party of the first part one-half of the cost of building the wall; and concluded, "In witness whereof the parties of the first and second parts have hereunto set their hands and seals the day and year above written. K. MacKinzie. [L. S.]" The petition, to show privity, alleged the contract to be between Stephenson and Bailey. It was held that, after showing Stephenson to be the owner of the lot adjoining Bailey's lot, parol evidence was admissible to show that they were the principals in the contract.

And so it would seem that, where a contract on its face fails to show privity of the party seeking to avail himself of its terms, he may set up privity thereto by averring that it was in fact made by one of the parties thereto as his agent, and support the allegation with parol evidence on the trial of the cause. The averment of agency in such a case is not a conclusion of law or of an inference drawn from the contract, but is an averment of a substantive fact which is admitted on demurrer.

*Buffalo Catholic Institute v. Bitter et al.*, 87 N. Y. 250, was an appeal from the General Term of the Supreme Court in the Fourth Judicial Department affirming a judgment of Special Term sustaining a demurrer to the complaint. The action was brought by the Buffalo Catholic Institute to enforce specific performance of a contract between Weisser, defendant's intestate, and Frones, for the sale and conveyance by Weisser of certain real estate. The complaint alleged that Weisser, by contract in writing therein set out, agreed to sell and the plaintiff thereby agreed to buy, etc., and alleged performance and tender of performance by plaintiff, and refusal to perform by Weisser, and prayed relief. The contract set forth commences, "Contract of agreement between Henry Weisser and Charles V. Frones, President," of the second part, and was signed by both parties, Frones

adding to his signature the words "President of the Buffalo Catholic Institute." The contract provided, among other things, that it was made on condition "that the Buffalo Catholic Institute will accept and approve of this purchase and its terms and agreement on or before November 1, next," in which event the party of the second part covenanted to pay, as provided therein, the unpaid purchase money, to be secured "by a bond and mortgage upon the property." There was a demurrer upon the ground that plaintiff had no legal capacity to sue, which was sustained by the lower courts and affirmed by the Supreme Court, which, in passing, said: "There is no averment that Frones was president of the plaintiff or its agent or made the contract as such, or that it was intended as a contract between Weisser and the plaintiff;" thereby intimating very strongly, to our minds, that if such had been alleged the same would have been admitted on demurrer as a subtantive fact sufficient to show that the contract was made for the benefit of defendant, and that privity existed entitling him to sue thereon.

*Tarver v. Garlington,* 27 S. C. 107, 2 S. E. 846, 13 Am. St. Rep. 628, was a suit by the payee on a promissory note signed, "S. D. Garlington, Agent." The complaint alleged that defendants, through their agent, S. D. Garlington, were the makers of this note, and, after other usual allegations, prayed judgment against them for the amount thereof. Defendant George F. Young demurred to the complaint on the ground that it failed to state facts sufficient to constitute a cause of action. The trial court sustained the demurrer, but on appeal the Supreme Court reversed the lower court, and held that the demurrer admitted the truth of the allegation of agency and the promise to pay, and reversed and remanded the cause.

We are therefore of the opinion that the answer states facts sufficient to show that the contract, while purporting on its face to have been made by and between the railroad company, "party of the first part," and the citizens of Guthrie, "*   *   * acting by and through the Guthrie Club of Guthrie," party of the sec-

ond part, was by the demurrer admitted to be made by said club "acting as the special agent of the subscribers of said donation," of which this defendant is alleged and conceded to be one, and the demurrer thereto on this point was improperly sustained; that is, if the answer discloses that time is of the essence of said contract. This is a matter of mutual intention of the parties, to be ascertained from the contract itself. Wilson's Rev. & Ann. St. 1903, is amendatory, and provides:

"Section 787: A contract must be interpreted as to give effect to the mutual intention of the parties, as it existed at the time of contracting, so far as the same is ascertainable and lawful."

"Section 788: For the purpose of ascertaining the intention of the parties to a contract, if otherwise doubtful, the rules given in this chapter are to be applied."

Then follows a lot of rules laid down to aid in ascertaining the intention of the parties to the contract, one of which is: Sec. 809: "Time is never considered as of the essence of a contract, unless by its terms expressly so provided." This section does not read, nor does it mean, that time shall never be considered as of the essence of a contract, unless by its terms expressly so provided. This section is simply given us as a rule by which to ascertain the intention of the parties to a contract, as is so expressly stated in section 788, *supra*.

That the intention of the contracting parties as expressed in the contract is to govern regardless of the phraseology is expressly held in *Standard Lumber Company v. Miller & Vidor Lumber Company*, 21 Okla. 617, 96 Pac. 761, where Mr. Chief Justice Williams, speaking for the court in the construction of section 788, *supra*, said:

"It was clearly not the intention in the adoption of such a statutory provision as this to require the identical language of the statute to be inserted in a contract before time could become the essence thereof. Code provisions have ever been adopted for the purpose of abolishing technicalities and applying substantial justice; and it necessarily follows that where it appears by the language expressed in a contract, regardless of the phraseology or

the form of expression used, that it was the intention of the parties thereto that time should be the essence of the contract, that should be the construction in law."

Guided by this rule, let us ascertain if we can from the face of the contract and note, which is to be construed as part thereof, whether it was the intention of the parties thereto at the time it was executed that time should be of the essence thereof.

The contract, after reciting the parties thereto as aforesaid, states, in substance, that whereas the proposition to extend plaintiff's line was submitted to the citizens of Guthrie as aforesaid, provided they would execute and deliver their promissory notes as stated of the value of $50,000, and also secure for its use and benefit the passage of certain ordinances as should be necessary for its use in construction of its said road; and whereas, the proposition was accepted as stated, and the citizens had executed said notes approximately of the face value of $54,000, and had the same ready for delivery, and ordinances had been passed permitting it to operate its line into and through the city of Guthrie; and whereas, a question had arisen whether the said notes were of the full value of $50,000, in lieu of additional subscriptions resolutions had been passed directing a contract to be entered into between the city and said railroad company giving to it certain additional concessions; and whereas, for the purpose of building said road said company on February 14, 1902, had filed articles of incorporation in the office of the Secretary of the Territory of Oklahoma, and received a charter under the name of "The Fort Smith and Western Railroad Company in Oklahoma," permitting it to build said line; that, therefore, for the purpose of carrying out the intention of the parties thereto, and in consideration of the surrender to the Railroad Company of the promissory notes aforesaid. it was stipulated and agreed between the parties thereto that the railroad company, among other things, would complete the entire grade for its said line of railroad from the present terminus in the Indian Territory to the city of Guthrie within 15 months from February 1, 1902, and have said line constructed and in operation within 18 months from that date. The notes

mentioned in said contract and turned over by the club to defendant in error pursuant to its terms contained the following clause:

"Provided, always, that this note becomes due and payable when said railroad company shall have in operation a line of railroad from the present terminus of its line in the Indian Territory to the city of Guthrie, Oklahoma Territory."

Neither contract nor note contains the express stipulation that time shall be of the essence of this contract; but as the only advantage accruing therefrom to the note-givers from said contract is a fixed time for the completion of the road, which by the note was left indefinite, it is clear to our minds that the fixing of the time of completion was their sole motive in making it, and that the object of placing the notes in the hands of their alleged agent, the club, was to enable it to hold up the deal until that advantage was secured. It would thus seem that it was the intention of the parties thereto to make time the essence of the contract, and we shall so hold. We are not unmindful in so holding that said club by resolution duly passed on March 6, 1903, after reciting the state of the work and that it might not be possible for defendant in error to complete the road within the time mentioned in said contract, extended the time fixed therein not exceeding 60 days from August 1, 1903, which said resolution was duly accepted by George W. Kinney, president of the Ft. Smith & Western Railroad Company in Oklahoma on behalf of said company; but the same does not affect said holding, for the reason that said club in so doing is expressly averred in the answer to have acted without the knowledge, consent, or authority of the note-givers and without their ratification, which averment is admitted on demurrer. Time being thus seen to be of the essence of the contract, the completion thereof by the time fixed was a condition precedent to a recovery in this cause. It is unnecessary to cite authorities in support of a doctrine so well established, but we cite a few.

In *Garrison v. Cooke*, 96 Tex. 228, 72 S. W. 54, 61 L. R. A. 342, 97 Am. St. Rep. 906, the contract sued on was as follows: "In consideration of T. S. Garrison constructing, equipping, and

operating a line of railroad from Timpson, Shelby county, to Carthage, Panola county, Texas, and running daily trains thereon before the 1st day of October, 1898, we agree to pay," etc. The road was not completed within the time, and one of the defenses to the suit was that time was of the essence of the contract, and for that reason the road could not recover. The Supreme Court, in passing, said:

"(1) Does the subscription show upon its face that time was of the essence of the contract? (2) Do the facts show that time was of the essence of the contract? * * * The rule of the common law was that time is always of the essence of the contract . When any time is fixed for the completion of it, the contract must be completed on the day specified, or an action will lie for the breach of it. Pollock on Contracts, 462. The rule is also announced, and the elementary books recognize, that at law time is in general of the essence of the contract. Bishop, Contracts, 1344; Hanson, Contracts, 331; Clark, Contracts. 596; Beach, Contracts, 617. We understand the rule to apply where one party agrees to pay money to another in consideration of the doing of an act by such other party within the specified time. In General, in such a case the promise to pay could not be enforced unless the act be performed within the time. * * * A promisor of a bonus to a railroad company acquires no right by the construction of the road. It would seem but reasonable that in the latter case the promisee should be held to a rigid compliance with the conditions of the contract. A contract to pay money, in consideration that the promisee will build a railroad by a certain time, implies very clearly that the money is to be paid only on condition that the road be constructed within the time, and, in our opinion, time in such a case is of the essence of the contract. The fact that the parties by subsequent agreement extended the time for the completion of the road shows that such was their own construction of the contract, and, even if it were a doubtful matter ought to have a controlling effect in determining their intention."

See, also, *Powers v. Rude et al.,* 14 Okla. 381, 79 Pac. 89, and cases cited; *Jordon v. Newton,* 116 Mich. 674, 75 N. W. 130; *Coos Bay Railroad Company v. Nosler,* 30 Or. 547, 48 Pac. 361; *Persinger v. Bevill,* 31 Fla. 364, 12 South. 366; *Railroad Com-*

*pany v. Boestler,* 15 Iowa, 555; *Chicago Railroad Company v. Town of Clayton,* 88 Ill. 45; *Jones v. U. S.,* 96 U. S. 24, 24 L. Ed. 644.

It is unnecessary to discuss the remaining questions arising on the pleadings in this case, except to say that inasmuch as the Supreme Court of the Territory of Oklahoma laid down the rule in *Guss v. Federal Trust Co.,* 19 Okla. 138, 91 Pac. 1045, that a note of the character involved in this case is not void as against public policy, and cites in support thereof *W. B. Piper v. Choctaw Northern Townsite and Imp. Co.,* 16 Okla. 436, 85 Pac. 965, and *McGuffin v. Coyle & Guss,* 16 Okla. 648, 85 Pac. 945, 86 Pac. 962, 6 L. R. A. (N. S.) 524, we do not feel at liberty at this time to disturb the rule.

It follows that the judgment of the lower court is reversed, and the case remanded for a new trial in accordance with this opinion.

All the Justices concur.